(No. 28281.—

LILY PARSONS REIGHLEY, Appellee, *vs.* CONTINENTAL ILLI-
NOIS NATIONAL BANK AND TRUST COMPANY OF CHI-
CAGO *et al.*—(REGINALD B. PARSONS, Appellant.)

*Opinion filed March 21, 1945—Rehearing denied May 21, 1945.*

HETH, LISTER & FLYNN, (LLOYD D. HETH, of counsel,) both of Chicago, for appellant.

THEODORE M. STUART, of San Francisco, Cal., and WINSTON, STRAWN & SHAW, (JAMES H. CARTWRIGHT, and GEORGE B. CHRISTENSEN, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE GUNN delivered the opinion of the court:

Lily Parsons Reighley, hereafter called plaintiff, filed suit in the superior court of Cook county against Continental National Bank and Trust Company of Chicago, as trustee, hereafter called the bank, and appellant, Reginald B. Parsons, her former husband. The purpose of the suit was to recover support money claimed to be owing by Par-

sons and secured by deposits of securities with the bank, and to be paid to the plaintiff monthly on account of Parsons to the plaintiff. The superior court found in favor of plaintiff, and entered judgment for the amount due with interest. The judgment of the superior court was affirmed by the Appellate Court for the First District. Appeal to this court has been allowed.

The suit involves the validity of the contract for future support entered into between the plaintiff and the defendant in Berlin, Germany, while they were husband and wife. Two contracts are involved. The support contract, hereafter referred to as the Berlin contract, was made in Berlin, and just before a proceeding taken on behalf of the wife to terminate the marriage. This contract provided that Parsons would pay to the plaintiff the sum of $1000 per month throughout her life, regardless of whether she remarried. It also provided Parsons would provide security that the monthly payments would be made by depositing stocks or bonds with the Continental Illinois National Bank and Trust Company of Chicago sufficient to guarantee that the monthly payments would be made as agreed. The second contract will be hereafter referred to as the Chicago contract. The Berlin contract was executed August 17, 1936, before the marriage had been terminated by the Berlin decree, and was signed by the plaintiff and Parsons. The Chicago contract was entered into October 2, 1936, after the decree had been entered, and was signed by the bank and Parsons, and recites it is made in accordance with the Berlin contract, a copy of which was attached to it.

The complaint recites the Berlin contract, the annulment decree in Berlin, the execution and terms of the Chicago contract, the delivery of securities to the bank by Parsons, the payments to plaintiff by the bank under the contract, the notice to the bank by Parsons to stop payments, the plaintiff's demand for the resumption of pay-

ments and the bank's refusal. The bank answered setting forth the securities held by it and their value, and in substance that it had no interest in the funds other than to see that they were paid to the party adjudged by the court entitled to the same, and that there was no one interested in the funds other than the plaintiff and the defendant Parsons. Parsons in his answer charged that the Berlin contract was void for want of consideration; that the decree of annulment and the agreements were the result of a fraudulent scheme made and carried out by the plaintiff; that plaintiff has since remarried to one Reighley, who was a party to the fraud; that the Berlin contract was void because it was made to facilitate the decree separating the parties and was against German and Americon public policy; that the contract was entered into under a mutual mistake of the parties; that Parsons had no duty to support the plaintiff after the annulment; that the contract was shocking and inequitable. Replies were made to these several matters and issues formed which presented questions of law and fact.

The defendant Parsons also filed a counterclaim in which he alleges that the Chicago contract was made by reason of the provisions in the Berlin contract, that the securities were deposited with the bank in accordance with it, and that, since the Berlin contract was absolutely void, the Chicago contract was necessarily void also, and prays that the court decree the Berlin contract null and void, and that the obligation to deposit securities be declared discharged and terminated and the shares of stock returned to the defendant Parsons. The plaintiff answered the counterclaim in effect denying all of the charges therein, and reasserting her right to a recovery. It is to be observed that the validity of the Chicago contract is not assailed except in so far as it was required by the alleged invalid Berlin contract.

Upon analysis, the contention of Parsons that the Berlin contract is invalid resolves itself into three principal points: (1) that the contract is void and unenforcible for lack of consideration; (2) that the contract providing for support money after remarriage is void as against public policy, and also because it was made to facilitate a separation of the parties; and (3) that the contract is unenforcible for the reason it is the result of a fraudulent scheme upon the part of the plaintiff. The other issues raised by the pleadings were either abandoned, had no evidence offered to support them, or are here considered under the three defenses above. The plaintiff, in answer to the contentions made by appellant, contends that the contract was valid; that no public policy was violated; that there is no evidence whatever of fraud; and that the Chicago contract is a fully executed trust, and valid, regardless of all of the other matters alleged as a defense.

At the outset, one of the first questions for determination is whether the contract is governed by German law or that of the court in which the suit was instituted. It is claimed by appellant that the contract expressly provides that its legality and construction be determined by the law of the State of Illinois, and, therefore, even though it be held valid under the laws of Germany, yet, construed by Illinois law, it is void.

We will first examine the position of the parties without reference to the alleged contract provisions electing to be bound by Illinois law, and determine the effect of the contract between the parties as though it did not contain any such provision. A contract made in one jurisdiction will usually be enforced in another jurisdiction if legal where made. (*Burr* v. *Beckler,* 264 Ill. 230; *Chicago and Eastern Illinois Railroad Co.* v. *Rouse,* 178 Ill. 132; *Miller* v. *Wilson,* 146 Ill. 523; *Oakes* v. *Chicago Fire Brick Co.* 388 Ill. 474.) *A fortiori* a contract made

in one country and to be performed in another will be enforced in the latter, unless contrary to public policy. (*George* v. *Hass,* 311 Ill. 382; *Benedict* v. *Dakin,* 243 Ill. 384; *Oakes* v. *Chicago Fire Brick Co.* 388 Ill. 474.) If no place of performance is specified in the contract it is presumed to be performed at the place of making. *Lewis* v. *Headley,* 36 Ill. 433; 40 Am. Jur. p. 724; *Oakes* v. *Chicago Fire Brick Co.* 388 Ill. 474.

However, both the Berlin contract and the Chicago contract provide that payments be made at the place of residence of plaintiff. Clause 2 of the Berlin contract provides that payment be made within the first week of each month at the place of her residence designated by Mrs. Parsons. Her place of residence at that time was Berlin. The subject matter of the contract was support of the wife for a contemplated "cancellation" or "dissolution," because in paragraph 1 of the contract it recites that a suit has been filed for the cancellation of the marriage; and in paragraph 9 reference to the dissolution of the marriage is made. The Berlin contract does not use the word "annulment," as recited in the first paragraph of the Chicago contract. Section 1345 of the German Civil Code provides that if the nullity of the marriage was known to one of the spouses at the time of the contract of marriage the other spouse may have a judgment of nullity or for a dissolution, and demand maintenance as though in the case of divorce, provided the ground of nullity was not known to such party. Support of the wife in case of justifiable separation is also a proper subject matter of contract in Illinois. *VanKoten* v. *VanKoten,* 323 Ill. 323.

The marriage was annulled in the Berlin court on the ground of impotency, which in Illinois is a ground for divorce and not annulment. In view of general principles and the provisions of the German Civil Code the Berlin contract would be held valid, unless there was an agree-

ment to have its validity and construction determined by Illinois law and, under the latter, it was void. It is said that the Berlin contract expressly provided that the law of Illinois should be adopted and become a part thereof. Ordinarily the law of the country where the contract is made is considered a part of the contract, but it is permissible for the parties to agree, subject to certain limitation, that the construction of a contract and the validity of the same may be governed and controlled by a law agreed upon between the parties. *Mutual Life Ins. Co.* v. *Cohen,* 179 U. S. 262, 45 L. ed. 181; *McAllister* v. *Smith,* 17 Ill. 328; *Crawford* v. *Seattle R. & S. Ry. Co.* 86 Wash. 628, L. R. A. 1916-D, 732.

Section 6 of the Berlin contract provides that disputes arising from the contract may be litigated in the courts where the plaintiff files suit, subject to the condition that the agreement between the parties would be legal according to the law of the place where the court was situated. It is, however, further provided that, in case of divergence in the law, the suit may be brought where the deposit is situated, and be governed by the Federal law or the State law in the United States of America, with the further proviso that if individual stipulations of the contract should be declared void the entire contract may not be declared void.

From these provisions relating to the jurisdiction of courts and the adoption of laws therein, it will be seen there is no precise agreement to be bound by all laws of Illinois, but only as to the court that may hear the cause, as there is not only an express reservation that the Berlin contract must be legal in the law of the forum, but also in no event should the entire contract be held void. It thus cannot be said that the parties left the construction, validity and interpretation of the contract in its entirety to the law of Illinois.

With this limitation, let us examine the contention of appellant. It is claimed that the decree in Germany was a decree of annulment; that its effect was to hold there never had been a marriage; that, never having been married, there was no obligation to support the plaintiff and, hence, where there was no obligation under the law to support, an agreement to do so was wholly without consideration, rendering the contract void.

The principles applicable where the law of two jurisdictions differs will now be considered. If it be assumed that creating the deposit and placing it in the bank under the Chicago contract be deemed performance in part at least in this jurisdiction, and that the contract arrangements contained in the Berlin contract permitted the law of Illinois to govern the construction of that contract, then the following principles have been held applicable. Both parties are presumed to know the law when they agree that it is to be governed by the law of another State. (*Mutual Life Ins. Co.* v. *Phinney,* 178 U. S: 327, 44 L. ed. 1088.) In such case the presumption is that the place of performance governs the construction and validity of the contract. (*Abt* v. *American Trust and Savings Bank,* 159 Ill. 467; *Lewis* v. *Headley,* 36 Ill. 433; *Mason* v. *Dousay,* 35 Ill. 424.) But the courts are inclined to give valid effect to a contract in like circumstances where it is valid in one place and invalid in another. *Pritchard* v. *Norton,* 106 U. S. 124, 27 L. ed. 104; *Garrigue* v. *Keller,* 167 Ind. 676; 74 N. E. 523, 69 L. R. A. 870; *Green* v. *Northwestern Trust Co.* 128 Minn. 30, 150 N. W. 229.

The Berlin contract, as well as the Chicago contract, specified the money should be paid plaintiff at her place of residence as designated by her. At that time it was Germany. The ultimate object of both contracts was the payment of money, and therefore the contract was to be performed at the place of payment. (*George* v. *Haas,* 311 Ill. 382.) We assumed, above, that the deposit, as

escrow, of securities in the bank might have the effect of performance of the contract in Illinois. Such is not the law, as we held in *Walker* v. *Lovitt*, 250 Ill. 543, "the mere taking of foreign security does not necessarily draw after it the consequence that the contract is to be fulfilled where the security is taken. The legal fulfillment of a contract of loan on the part of the borrower is re-payment of the money, and the security given is but the means of securing what he has contracted for, which in the eyes of the law is to pay where he borrows, unless another place of payment be expressly designated by the contract. [Citations.]" The contract obligates the appellant to pay at plaintiff's residence, which becomes the place of performance without regard to the location of the security given for its fulfillment.

Examining the Berlin contract, and remembering that the jurisdiction of the court and the construction of the contract is given, under conditions, to Illinois courts, we are impelled to the conclusion that the parties intended that if the facts, as they existed at the time the Berlin contract was made, justified a legal contract of like import in Illinois, the law of the latter could be followed, but no construction should be given declaring the contract void. Under the facts as they existed, had they happened in Illinois, a valid contract of separation could have been entered into. It is true the decree entered by the court upon such facts would have been one of divorce and not of annulment, because impotency in Illinois is a ground of divorce and not of annulment. Both parties presumptively being acquainted with the law of Illinois in this respect cannot be supposed to have entered into an agreement that would be held void in the face of their express provision that the contract could not be declared void. No contract should be held as intended to be made in violation of law, whenever, by any reasonable construction, it can be made consistent with law.

The argument of appellant that the contract is void because the decree was one of annulment instead of divorce is unsound because, in the first place, the contract preceded the annulment decree, and the character of the separation decree is not mentioned, but is variously described in the contract as "cancellation of the marriage," "the marriage declared void," and "dissolution of the marriage," and finally makes provision for the contingency in event the "marriage continued in force." - In the next place the argument rests upon the meaning of legal expressions used in a foreign state, after interpretation into another language, without reference to the actual facts, or the effect of what was decided by the German decree. It is undisputed that the facts justified a proceeding which would be classified as a divorce under the laws of Illinois. To say the marriage never existed is merely fiction, as the parties sustained a relation for approximately a year that in this State would be the status of marriage. If the marriage had been terminated under the Illinois law, on the same grounds the Illinois court could have allowed alimony and support payments, and a contract entered into between such parties, providing for said payments, would have constituted a valid consideration and would be binding upon the parties. (*VanKoten* v. *VanKoten,* 323 Ill. 323; *Shankland* v. *Shankland,* 301 Ill. 524; *Kohler* v. *Kohler,* 316 Ill. 33; *Berge* v. *Berge,* 366 Ill. 228.) There is a difference of opinion among the legal experts on German law as to the effect of section 1345 of the German Civil Code, and the Appellate Court properly held that the wife either had a right to support under the then existing conditions, or that the rights of the parties were in doubt to such an extent that the contract would be valid on the basis of a compromise of doubtful rights. (*Dougherty* v. *Duckels,* 303 Ill. 490.) We are of the opinion we have no basis upon which to hold the Berlin contract is invalid for want of consideration.

The appellant contends the contract is against public policy because, had the divorce been granted in Illinois and alimony fixed by the court, it would have been terminated in case of a remarriage of the wife. It is also claimed this contract was made for the purpose of facilitating and promoting a divorce. The contract recites that upon the basis of "probability which borders certainty * * * the marriage will be declared void;" and paragraph 9 provides that "Both parties are agreed that this present contract for support has not been made for the purpose to facilitate dissolution of the marriage. ·* * * Mrs. Parsons is entitled in any case to procure a dissolution of the marriage by court order." It has been many times held that a contract providing for the support of the wife in cases of separation, where they cannot longer live together congenially or where separation is necessary for the health and happiness of one or the other, when fairly entered into, is not illegal *per se,* and may be enforced with the limitation that a contract which provides that the husband is not liable to support is illegal and against public policy, because it attempts to relieve him of an obligation fixed by law. *VanKoten* v. *VanKoten,* 323 Ill. 323; *Lyons* v. *Schanbacher,* 316 Ill. 569.

Appellant also claims that to require him to pay the monthly sums is against public policy because the plaintiff has remarried, and, in Illinois, had said sum been fixed as alimony it would be terminated under the statute. The answer to this contention is that the payments were not fixed by decree but by a contract, which was no part of the court proceedings. We have held as recently as *Adler* v. *Adler,* 373 Ill. 361, that if a divorce settlement is incorporated in the decree, it is subject to modification by the court, and in case of a remarriage the court would vacate the order. However, in the same case we held that if the wife were receiving support money by a contract independent of the decree, the contract was still enforcible in

spite of the fact that, had it been alimony fixed in a decree, the court under the statute would have been compelled to terminate it.

In the present case, the agreement contained in the Berlin contract fixed the amount and the duration of the time of payments. It also provided how they would be secured. The Berlin contract contemplated that an arrangement would be made which would continue after the death of Parsons, and continue as long as the plaintiff lived. Approximately $200,000 of dividend-paying stocks were placed under the control of the bank. The securities were transferred to a nominee of the bank; it had authority to collect the dividends and pay them out monthly to the plaintiff in the amounts required; also, if necessary, to sell a part of the securities to make up any deficiency in the amount required to be paid. It had all of the valid requisites of an executed trust. In *Marble* v. *Marble,* 304 Ill. 229, we held that to constitute a valid trust there must be included four things: (1) the subject matter or property embraced in the trust; (2) the beneficiaries or the persons in whose behalf it is executed; (3) the nature and quantity of the interest which they have; and (4) the manner in which the trust is to be performed. The subject matter is here described as twelve hundred shares of stock; the beneficiary is Mrs. Parsons; the nature or quantity of the interest of Mrs. Parsons is the payment of $1000 per month for life; and it was to be performed by the bank, as trustee, by paying monthly the fixed sum and using part of the principal, if necessary; and at the death of Mrs. Parsons, or upon her releasing said claim, the entire principal was to be returned to Parsons or, in case of his death, to those legally entitled to it.

We have held that where there is a valid and executed trust it cannot be held invalid for lack of consideration. (*Badgley* v. *Votrain,* 68 Ill. 25; *Lynn* v. *Lynn,* 135 Ill. 18; *Meyer* v. *Pfahler,* 362 Ill. 336.) We do not think the

Berlin contract was forbidden by the public policy of Illinois, nor do we think the appellant was in any position, in the absence of fraud, to raise this question after he had placed the security for the performance of such Berlin contract beyond his reach, as a trust fund, to secure such payments as long as the plaintiff lived.

The appellant finally argues that the contract is the result of a scheme upon the part of appellee to defraud appellant. This contention has been passed upon adversely by the trial judge in his opinion deciding the case after the close of the arguments, and also by the Appellate Court. We do not purpose to analyze the details of evidence appearing in the record bearing upon this contention. Briefly, the facts are substantially as follows: Appellant and his first wife were visiting in Germany; at that time he had accompanying him a man who in part managed his property and was also looking after his interest in a divorce suit that had been filed by his first wife. It was during the course of this proceeding he met appellee. She was then acting as a model in a dress shop. Appellant claims he was nervous and under high tension, and needed her company to take his mind off his troubles, and this association progressed until he became engaged to her before his wife had obtained a divorce. He induced her to quit her job and paid her a salary because he did not want his future wife to work in a store. His first wife obtained her divorce in May, 1934, and appellant and appellee were not married until over a year later, in August, 1935. They went to the State of Washington and lived there approximately a year and came back to Germany in the year 1936 to attend the Olympic Games. It was in Germany, or in the course of the trip to Germany, the plaintiff apprised defendant that life with him was intolerable because of his physical condition, and he was told she was going to procure a divorce. It is apparent he was very desirous that she not divorce him, but

upon her persisting in such intention the question of support was taken up, and the conditions as to the amount and period of time of payment were agreed upon before a decree was granted. It is true appellant claims that this was done reluctantly, and even against his will, but militating against this contention is the fact that the escrow agreement was made after he returned to America, and the record discloses he corresponded with appellee in terms of affection up to the time he was married a third time, some two years later.

To our mind, the facts disclose infatuation upon the part of appellant, and perhaps little affection, or even tolerance, upon the part of appellee, but do not disclose any active scheme or plan to marry, divorce or mulct the appellant. The superior court judge found the proceeding was too leisurely to bear the construction of active fraud. The decree makes a specific finding that the Berlin agreement between the plaintiff and defendant was not procured by the plaintiff through any fraud, duress or wrongful conduct, misrepresentation, threats, or concealment of material facts upon her part. The evidence also shows that prior to the marriage Parsons was accompanied by his business manager, who introduced the appellee to him, and that there was also present an attorney, employed by appellant's father, to represent appellant in the divorce of his first wife.

There is doubt whether the plaintiff could be guilty of fraud covering the three main events resulting from the relations of the parties. (1) She had a right to accept his attentions and to become engaged to and to marry him when he was free to do so. (2) She had a right to complain of his disability to become married. (3) Finally, she certainly had a right to negotiate with him as to the amount of support money he would pay her in case the court dissolved the marriage. It seems difficult to conceive that the appellee could carry out a design to marry,

discover a ground for divorce or separation, and safely plan an annuity of $1000 per month for life as part of an original scheme, and we do not understand that appellant's attorney makes such a claim, but rather that the facts in the aggregate establish proof of such a plan and its consummation. If it was lawful for plaintiff to marry appellant how can it be a part of a scheme to defraud to make a contract for support, if a ground for separation exists and if the court would award support money if the question were submitted to it?

We do not think the evidence is sufficient to establish this claim, and in view of the fact that findings in favor of the appellee have been made both by the superior court and by the Appellate Court, it would require a substantial weight of the evidence upon the part of appellant to establish this claim. In our judgment such proof has not been made. It is true the amount to be paid monthly seems large, and if it had been allowed by a court as alimony in this State a court would have terminated such payments. It is also true that had the settlement been made in Illinois, and not embodied in the decree, it would still have been enforced under the rule laid down in *Adler* v. *Adler,* 373 Ill. 361. There is nothing in the record to show the amount of income the appellant had at the time the contract was made. The Berlin contract took into consideration that appellant's circumstances might not be such as to entitle him to ask that the monthly payments be reduced as long as they could be made out of the escrow, but, if the escrow fund or trust fund was insufficient to bring in the sum of $1000 per month and appellant's circumstances deteriorated, then appellee was not entitled to any more than would be realized from the trust fund, which had a value of approximately $200,000. Appellant inherited something over $1,000,000.

We must also consider that the contract is made for life, and the monthly payments might have been larger

if they had been payable only until plaintiff remarried. The agreement between the parties was wholly voluntary. Nothing has been shown to disclose it was so unreasonable or excessive as to shock the conscience. It may have been improvidently made, but that, in itself, is no ground for granting relief. Appellant's defenses were all affirmative in character, placing the burden of proof upon him, and, in the absence of such proof, we are of the opinion the judgment of the Appellate Court for the First District should be and is affirmed.

*Judgment affirmed.*