Reginald B. Parsons v. Commissioner.
Parsons v. Commissioner
Docket No. 22678.
United States Tax Court
1951 Tax Ct. Memo LEXIS 97; 10 T.C.M. (CCH) 959; T.C.M. (RIA) 51297; September 24, 1951
*97 Section 22 (k) - Decree of a German court and agreement incident to the decree within scope of section 22 (k). - Petitioner was married to Lily Parsons (later Reighley). They resided in Seattle, Washington, during their marriage. When in Berlin, Germany, on a visit, Lily obtained a decree dissolving the marriage in 1936. She had a right to elect under German law to have the dissolution of the marriage, which was annulled, effective as a divorce for purposes of support by her former husband. While her suit was pending, she and petitioner executed a support contract by which petitioner obligated himself to pay her $1,000 monthly for life for her support regardless of remarriage. Evidence shows that the contract was valid. Petitioner deposited stock with a bank in escrow directing the bank to pay from dividends $1,000 monthly to Lily and balance to himself. He retained title to the stock. Held: (1) Lily Parsons elected to have the annulment treated as a divorce, exercising her right under section 1345 of the German Code, and the decree of the German court is properly treated as a decree of divorce under section 22 (k), I.R.C.(2) The Berlin contract was incident *98 to the decree of the German court, and payments thereunder were periodic payments within section 22 (k) and are not includible in petitioner's income. William E. Evenson, Esq., 914 Insurance Bldg., Seattle 4, Wash., for the petitioner. W. E. Koken, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent has determined deficiencies in income tax for the years 1943, 1944, and 1945 in the amounts of $8,607.73, $7,553.57, and $4,440.45 respectively. The year 1942 is involved, also, because of the provisions of the Current Tax Payment Act. The petitioner agrees that a few minor adjustments have been correctly made by the respondent which result in increasing taxable income for the years 1944 and 1945. The only question is whether the petitioner is taxable on $12,000 of dividends of stock owned by him, in 1942, 1943, 1944, and 1945 which he was obligated to pay and which was paid to a former wife. The question is presented under section 22 (k) of the Code, by agreement of the parties. The facts have been stipulated. The petitioner's returns were filed with the collector for the district of the State of Washington. *99 Findings of Fact The facts which have been stipulated by the parties are found as facts. The stipulation is incorporated herein by this reference. The petitioner is a resident of the State of Washington and a citizen of the United States. In 1935 the petitioner had his domicile and residence in Seattle, Washington. He was in Berlin, Germany, temporarily during 1935. There he met and married a citizen of Germany, Lily Schulze. They were married on August 12, 1935. She is referred to hereinafter, at times, as Lily. Following the marriage, the petitioner and his wife returned to and resided in Seattle, Washington, where they lived for about one year. The marriage was eventually terminated by decree of the District Court of Berlin in proceedings which were instituted by the then Mrs. Parsons. During the time the parties were married they acquired no property. At the time the marriage was terminated all property held was derived from properties of the petitioner to which Mrs. Parsons had made no contribution. Mrs. Parsons lost her German citizenship because of her marriage to the petitioner. In July 1936 the petitioner and Mrs. Parsons returned to Germany on a temporary visit. *100 While in Berlin, Mrs. Parsons came to the conclusion that she had good cause to petition to have her marriage to the petitioner terminated, and on July 17, 1936, she instituted proceedings in the District Court of Berlin. While the suit against the petitioner was pending, and before the court entered its decree, the petitioner and Mrs. Parsons entered into a written contract on August 17, 1936. Both parties were represented by a lawyer at the time the contract was drafted and executed. The contract is entitled a "Contract." It is referred to hereinafter as the Berlin contract, and it is incorporated herein by this reference. It was stated in the agreement that "Mrs. Parsons declared that she intended to make an alimony - and settlement contract with her husband, Mr. Parsons;" that Mrs. Parsons, due to her marriage to an American citizen, had lost her German citizenship; that both parties were convinced that a reason existed which justified Mrs. Parsons' filing a suit for cancellation of the marriage; that the parties expected with certainty that judgment would be entered by the court in Mrs. Parsons' favor; and that for the foregoing reasons the contract was to "regulate and safeguard *101 the support of Mrs. Parsons, both parties having agreed that this arrangement should be arrived at by agreement." The agreement recited, further, that "Mr. Parsons assumes the obligation to pay Mrs. Parsons an amount of one thousand U.S. Dollars monthly, starting with August 1, 1936;" That both parties were agreed that the "contract of support" was not being made for the purpose of facilitating dissolution of the marriage because Mrs. Parsons was entitled in any case to procure dissolution of the marriage by court order; that if, for any reason and contrary to all expectations, the complaint of Mrs. Parsons should not be granted and, therefore, the marriage of the parties should continue in force, the parties reserved the right to enter into another agreement. The agreement provided the support payment of $1,000 per month would be made to Mrs. Parsons for life, regardless of whether she or Parsons should marry again. In order to carry out the obligation of support, the petitioner agreed to deposit stocks with the Continental Illinois National Bank and Trust Company of Chicago, hereafter referred to as the Chicago bank, in such an amount that the income derived from the stock would *102 guarantee the full amount of the support payments; and Parsons agreed to give the Chicago bank holding the deposit irrevocable instructions to remit the support payments to Mrs. Parsons at her residence. It was provided that the stock deposited to safeguard the claims of Mrs. Parsons for support would not become her property and that Parsons would have full rights over the securities deposited if and when his obligation to make the support payments had ceased entirely; and that if there remained any income from the securities deposited in excess of the amount required to guarantee regular payments of $1,000 monthly to Mrs. Parsons, then such excess could be paid by the bank to Parsons. The contract provided, also, that Parsons' obligation to make the monthly support payments to Mrs. Parsons would be binding upon the heirs of Parsons, with the understanding that the obligation of the heirs should be limited to making payment exclusively out of the securities deposited with the Chicago bank. In case of disputes arising under the contract, it was agreed that any court would have jurisdiction as should be designated by the party filing a suit, and that, for the judgment of their possible *103 legal disputes, both parties would submit to that law which is determinative for the court chosen by the party filing the suit. In general, the parties agreed, with respect to the law which would govern in the case of a dispute, that "the federal law or the state law in the United States of America" could be applied. On August 20, 1936, the District Court of Berlin entered a decree in Mrs. Parsons' favor. The report of the District Court of Berlin including the findings of fact and the statement of the grounds for the decision is incorporated herein by this reference. The court found that the plaintiff had innocently erred with respect to the personal qualities of the defendant and that the defendant knew of his personal characteristics at the time of entering into the marriage contract; that the plaintiff would not have married the defendant if she had known the facts. The Berlin court decreed that the marriage of the parties was annulled and that the plaintiff, the then Mrs. Parsons, had grounds to proceed to attack the marriage under the provisions of paragraph 1333 of the German Civil Code; that she was the innocent party; and that her complaint was well founded under paragraph *104 1333 of the German Civil Code. In execution of the Berlin contract, the petitioner, on October 2, 1936, deposited 1,200 shares of stock of Bemis Bros. Bag Co., Inc. with the Chicago bank and directed the bank to collect the dividends on the stock, to pay $1,000 monthly out of the dividends to Lily during her life, and to pay to him the excess, if any, of the dividends required to guarantee the monthly payments to Lily. Petitioner executed an instrument entitled "ESCROW SECURITY PLEDGE AGREEMENT," which is incorporated herein by this reference and which is called hereinafter the Chicago contract. The stock was deposited under this contract. The Chicago contract incorporated the Berlin contract. Petitioner retained title to the stock. The Chicago contract provided that: "Parsons herewith deposits with and delivers to the Bank in pledge stock certificates for twelve hundred (1200) shares of common stock of Bemis Bros. Bag Co., Incorporated, the title of which stock shall at all times remain in said Parsons, subject to the following conditions: * * *
"Parsons has the right, with the consent of Mrs. Parsons, to substitute other stocks or securities for those originally deposited *105 with the Bank. * * *
"It is understood that the deposited stock shall be transferred on the books of Bemis Bros. Bag Co. Incorporated, into the name of a nominee of the Bank, so that the dividends and other income with respect thereto shall be payable to such nominee and thus received by the Bank, but the legal title to said stock shall at all times remain in Parsons, subject only to the pledge hereby made in accordance with this Agreement and the irrevocable assignment of the income to Mrs. Parsons, as herein provided. * * *, upon the death of Mrs. Parsons, the Bank shall thereupon redeliver the stock to Parsons if he be then living, or, * * * to the person legally entitled thereto, * * *." The Chicago bank, in the above contract, acknowledged receipt of the 1,200 shares of Bemis Bros. Bag Company stock and agreed "to hold the same, and disburse the income thereof." The Chicago contract provided that it and the Berlin contract were to be construed according to the laws of the State of Illinois, and that in the event any dispute should arise under the two contracts it could be determined by state courts in Cook County, Illinois, or by the United States District Court for *106 the Northern District of Illinois. Following the execution of the Chicago contract, the Chicago bank made payments from dividends to Lily Parsons until sometime in August 1939 when the petitioner directed the bank to stop payments because the Berlin and Chicago contracts were invalid and fraudulent. One reason for petitioner's directions to the bank was that in August 1938 Lily married Lloyd Reighley (formerly Reichenheim) whom she had known in Berlin prior to her marriage to the petitioner, and to whom she is still married. Upon Lily's marriage to Reighley the petitioner came to believe that he had been defrauded by Lily. When the bank stopped making payments to Lily she demanded the payments, but the bank refused to make any payments. The bank continued to collect the dividends on the Bemis Bros. Bag Company stock as they were paid, and with respect to the share thereof claimed by Mrs. Reighley, the bank held dividends in escrow at the rate of $12,000 per year until the judgment of the Cook County Superior Court became final in 1945, when the bank made payment to Mrs. Reighley. In 1940 Mrs. Reighley filed suit in the Superior Court, Cook County, Illinois, case number S6134, against *107 the bank and Parsons to enforce payment of the monies due her under the Berlin and Chicago contracts, together with interest. Parsons filed a counter-claim against the bank and Mrs. Reighley in which he alleged that: the Berlin contract was wholly without consideration; was induced by fraud and duress; was against public policy; was entered into by mutual mistake of fact and had been rescinded; was null and void and could not be the basis of any valid obligation on the part of Parsons to make the contested payments to Lily Reighley; that the bank was not entitled to hold the stock as security for the disputed payments; and that no one had any right, title, or interest in the shares of stock or the dividends paid or accrued thereon and in the hands of the bank other than Parsons, the counter-claimant. The counter-claim alleged, further, that the Berlin contract and the Chicago contract, given to secure the Berlin contract, constituted clouds upon the title of Parsons to the 1,200 shares of stock; that the bank had refused to deliver the stock to Parsons because of the alleged claims and demands of Lily Reighley under the Berlin and Chicago contracts, whereby Parsons was prevented from *108 having and receiving the 1,200 shares of stock and the dividends accruing thereon. Parsons prayed for equitable relief and that, inter alia, the bank be ordered to return the stock to Parsons and to pay him all dividends, less proper expenses, which had not been disbursed by the bank prior to September 29, 1939. Mrs. Reighley filed motion for an order to be issued to the bank directing it to continue to make payments under the contracts during the pendency of the cause. The motion was denied by the court. The litigation was complicated and of long duration, and necessarily involved great time and expense. Each court by whom the case was decided held in favor of Mrs. Reighley. A decree in her favor was entered by the Superior Court on February 9, 1942, which was thereafter affirmed on May 19, 1944, by the Appellate Court of Illinois ( Reighley v. Continental Illinois National Bank & Trust Co., et al., 323 Ill. App. 479, 56 N.E. 2d 328); and which was finally affirmed by the Supreme Court of Illinois on May 21, 1945, ( Reighley v. Continental Illinois National Bank & Trust Co., et al., 390 Ill. 242, 61 N.E. 2d 29). The Illinois courts held that the Berlin *109 contract was not fraudulent, was not void, was not inequitable, was not contrary to public policy, and that it was supported by valuable and sufficient consideration; that the Chicago contract was valid and equitable, and was an execution pro tanto of the Berlin contract; that the Berlin contract constituted a settlement of either valid and enforceable legal rights or of rights not without foundation which might have been the subject of bona fide litigation in German courts. The trial court, the Superior Court for Cook County, concluded with respect to section 1345 of the German Civil Code [1] as follows: "* * * the Court finds that under a proper construction of said Section 1345 in connection with other sections of the German law, plaintiff [Mrs. Lily Reighley] had a valid and enforceable right to obtain a court order in Berlin, Germany, immediately after the annulment, requiring the defendant, Reginald B. Parsons, to furnish her with support, provided that in said proceeding she established the nullity of the marriage was known to Parsons at the time of the marriage and that the same was not known to plaintiff, and, on the basis of the testimony and evidence introduced in this *110 case, it is probable that she could have established those facts." *111 The Supreme Court of Illinois at 390 Ill. 242, 61 N.E. 2d 29, stated that the ground for the annulment of the marriage as set forth in the decree of the Berlin District Court, was ground for divorce in Illinois; that the provisions of the Berlin contract and the performance thereof by creating the deposit of securities in a bank in Illinois under the Chicago contract permitted the law of Illinois to govern the construction of the Berlin contract; that under the law of Illinois and the facts as they existed, had they existed in Illinois, a valid contract of separation could have been entered into, and, also a decree by an Illinois court, on the facts, would have been a decree of divorce under Illinois law. The Supreme Court of Illinois stated as follows (61 N.E. 2d 34): * * * If the marriage had been terminated under the Illinois law, on the same grounds the Illinois court could have allowed alimony and support payments, and a contract entered into between such parties, providing for said payments, would have constituted a valid consideration and would be binding upon the parties. VanKoten v. VanKoten, 323 Ill. 323, 154 N.E. 146, 50 A.L.R. 347; *112 * * * By the judgment of the Superior Court for Cook County the Chicago bank was ordered to pay all past due installments plus interest to Lily, and to comply, in the future, in all respects with the contracts, and to make the payments to her for as long as she should live. The opinions of the Superior Court, the Appellate Court, and the Supreme Court have been received in evidence in this proceeding, and they are incorporated herein by this reference. While the litigation was pending in the Illinois courts, the right of Mrs. Reighley to $1,000 per month of the dividends of the deposited stock remained undetermined. In May 1945 the bank paid in one sum the total arrearages dating back to August 1939, plus interest, to Lily, which included $12,000 for each of the years 1942, 1943, and 1944, and for 1945, the bank paid the total amount of $12,000 to Lily. The petitioner omitted from his income tax returns for the years 1942-1945, $12,000 for each year, of dividends on the Bemis Bros. Bag Company stock. Section 1333 of the German Civil Code adopts the principle that a marriage may be avoided on certain grounds, [2] but section 1345 of the German Civil Code permits the doctrine of *113 putative marriage to be elected by an innocent spouse so as to provide such spouse with support or property settlement after a marriage, under section 1333 is dissolved. Section 1345 gives the innocent spouse a right to elect to have the annulled marriage, for purposes of support, treated as though there had been a divorce. The effect of making an election under section 1345 is that the innocent spouse is in the same position as if the marriage had been dissolved by a decree of divorce with regard to the right to receive support. The provisions of section 1345 provide an exception from the principle of section 1343. If an innocent spouse exercises the right to make the election under section 1345, a settlement between the spouses is governed in point of time from the date when the marriage was dissolved. An innocent spouse may make an election under section 1345 by entering into written agreement which provides for her support after the dissolution of the marriage. *114 The Berlin contract was incident to the dissolution of the marriage of the petitioner and Lily. It was entered into in contemplation of the dissolution of their marriage. The petitioner, under the Berlin contract, incurred the obligation to make support payments to Lily for life after the dissolution of the marriage because of the marital relationship which had existed. The payment which Lily received in 1945 under the decree of the Superior Court pursuant to the Berlin and Chicago contracts represented arrearages in "periodic payments" within the meaning section 22 (k), I.R.C.; they were support payments; they were in discharge of Parsons' legal obligation under the contracts incurred because of the marital relationship. Lily, by entering into the Berlin contract, elected to claim and receive the rights allowed an innocent spouse by the provisions of section 1345 of the German Civil Code, and thereby asserted her right to receive support. The amount of $12,000 is not includible in the income of the petitioner for each of the years 1942-1945. Opinion The parties are agreed by their stipulation of facts that no question is presented under section 23 (u) *115 of the Code, and that the only question to be decided arises under section 22 (k), and is whether the payments provided by the Berlin and Chicago contracts are "periodic payments" within section 22 (k). The respondent admits that his determinations here are contrary to those made in Lily R. Reighley, 17 T.C. -, promulgated September 20, 1951. The facts in this proceeding are the same as in the proceeding of Lily R. Reighley, supra. We have there held that the payments provided by the contracts involved are "periodic payments" within the scope of section 22 (k). We make the same holding in this proceeding. Therefore, with respect to each of the years involved here, the respondent's determination is reversed. The stipulation of facts refers to the Chicago contract as a "trust agreement," and the Chicago bank as a "trustee." We believe it should be noted that the pleadings do not present a question whether the petitioner, by the provisions of the Chicago contract, created a trust for the benefit of Lily Parsons Reighley, and we do not decide such question. See John Gerber Co., 44 B.T.A. 26, 31; Maltine Co., 5 T.C. 1265, 1275. Decision will be entered under *116 Rule 50. Footnotes
1. German Civil Code: 1345: If the nullity of the marriage was known to one of the spouses at the time of the marriage, the other spouse, unless the nullity was also known to him or her, may after the declaration of nullity or dissolution of the marriage demand that their relationship as to property rights, particularly with respect to the duty of support, be so treated as if the marriage at the time of declaration of nullity or dissolution had been dissolved by divorce, and the spouse to whom the nullity was known, had alone been adjudged guilty. * * *
1347: If the spouse, who has the right provided in section 1345, paragraph I, declares to the other spouse, that he will make use of the right, he cannot then avail himself of the effects of the nullity of the marriage; if he declares to the other spouse that he will abide by these effects, the right provided in section 1345, paragraph I, is extinguished. The other spouse may require the spouse, so entitled, to declare within a reasonable given time, whether he will avail himself of the right. In this case the right can be exercised only up to the expiration of the time limited. 1564: A marriage may be divorced for the grounds stated in the sections 1565 to 1569. The divorce is effected by judgment. The dissolution of the marriage takes effect with the finality of the judgment.↩
2. 1333: A marriage may be avoided by that spouse who, at the time of entering into the marriage, erred as to the identity of the other spouse or such personal qualities of the other spouse, which, if the true facts had been known to him or her and reasonably evaluated by said party in the light of the nature of marriage, would have prevented him or her from entering into the marriage. 1343: If a voidable (anfechtbar) marriage is avoided, it shall be regarded as void (nichtig) from the beginning. * * *↩