**PAL AIR INTERNATIONAL, INC., Plaintiff**

**v.**

**JAMES PORTER, CONSTANCE PORTER, and SAMOA
AVIATION, INC., Defendants**

High Court of American Samoa
Trial Division

CA No. 70-95

July 16, 1996

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge, and
BETHAM, Associate Judge.

Counsel: For Plaintiff, Togiola Tulafono, Edward A. McConwell,
*pro hac vice*, and James W. Hardesty, *pro hac vice*
For Defendants, Marshall Ashley

Order Denying Motion for Summary Judgment:

Plaintiff Pal Air International, Inc. ("Pal Air") has moved for summary
judgment on the issue of its ownership of stock in defendant Samoa
Aviation, Inc. ("Samoa Air"). The motion was argued during a telephonic
conference in chambers on June 24, 1996. Counsel Ashley and Togiola

were present, and counsel Hardesty participated from Reno, Nevada.

## I. Standard of Review

Pal Air made a compelling argument and presented one of the best-written and most thoroughly supported motions for summary judgment that we have seen in some time. Nevertheless, we remind ourselves that well-written briefs, while they are pleasant to read and do much to carry forth a party's arguments, do not of themselves win a motion. Pal Air carries a substantial burden to receive summary judgment. A strongly made argument, even one that may be sufficient to prevail at trial, will not necessarily earn a favorable ruling on a motion for summary judgment.

To prevail on a motion for summary judgment, the moving party must show that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." T.C.R.C.P. 56(c); *Amerika Samoa Bank v. Pacific Reliant Indus.*, 20 A.S.R.2d 102, 107 (App. Div. 1992); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962).

"In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor." *Clark v. Kizer*, 758 F. Supp. 572, 574 (E.D. Cal. 1990). It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968).

In deciding a motion for summary judgment, the court must assume the truth of the evidence presented by the non-moving party and draw from the evidence the inferences most favorable to the non-moving party. *ASPA v. National Pacific Ins.*, 23 A.S.R.2d 100, 101 (Trial Div. 1993); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

## II. Discussion

Pal Air claims that it was an original owner of 25,000 shares of stock in Samoa Air. This is undisputed. Pal Air further claims that it still holds these shares, and that it can assert its rights as a shareholder. Defendants James Porter and Constance Porter (collectively "the Porters"), on the other hand, argue that they have purchased all 25,000 shares of stock from Pal Air, and that it is, therefore, no longer a shareholder in Samoa Air. The Porters' allegation raises a genuine issue of material fact as to whether Pal Air continues to hold stock in Samoa Air, unless Pal Air can prove that it still owns stock as a matter of law, that is, that the sale alleged by the

Porters is legally unenforceable. Pal Air asserts several arguments for this proposition, but before turning to those arguments, we must first determine the question of applicable law.

A. Applicable Law

■ Pal Air argues that Nevada law should apply while the Porters argue that American Samoa law is better applied. Both parties agree that we should follow the "modern rule" for deciding the question of applicable law in this case. The modern rule provides for the application of the law of the forum with the most significant relationship to the transaction and the parties. *See generally* 16 AM. JUR. 2D *Conflict of Laws* § 83, at 139-43 (1979). We believe this is the appropriate rule to apply to conflict of law questions regarding contracts.

■ In determining which forum has the most significant relationship to a transaction and the parties, five factors are of primary consideration: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(2) (1971). In applying the modern rule, the court does not count contacts, but rather considers which contacts are the most significant and determines where those contacts are located. *Smith v. Hughes Aircraft Co.*, 783 F. Supp. 1222, 1228 (D. Ariz. 1991); 16 AM. JUR. 2D *Conflict of Laws* § 84, at 1245.

Leiataua was not remanded to the correctional facility immediately upon her return on June 19, 1996, but was permitted to remain in a release status in order to participate in the funeral and related activities for her mother on June 20-23, 1996. On June 24, 1996, she was remanded to custody as of 9:00 a.m. on June 25, 1996 Leiataua was not remanded to the correctional facility immediately upon her return on June 19, 1996, but was permitted to remain in a release status in order to participate in the funeral and related activities for her mother on June 20-23, 1996. On June 24, 1996, she was remanded to custody as of 9:00 a.m. on June 25, 1996. The place of contracting, as well as the site of all negotiations, is Reno, Nevada. Although the Porters state in their brief that negotiations took place in American Samoa, James Porter's affidavit--the only affidavit upon which the Porters rely--states only that negotiations took place in Nevada. *Cf.* Resp. to Pl.'s Motion for Summ. J. at 2 [hereinafter Resp.] *with* Aff. of James A. Porter at 1. Thus, the first two factors weigh in favor of the application of Nevada law.

■ The place of performance is contested. Pal Air claims that the place

106

of performance was to be Nevada.[3] The Porters argue that performance was to be partially in Nevada, where payment was to be made, and partially in Samoa, where they claimed the stock was to be delivered. However, nothing in any affidavit supports the Porters' contention. In the absence of evidence to the contrary, the place of performance is considered to be the place of contracting, *Mutual Life Ins. Co. v. Cohen*, 179 U.S. 262 (1900), which was Nevada. When the ultimate object is the payment of money, the place of performance is considered to be the place where the payment is received, *Reighley v. Continental Illinois Nat'l Bank & Trust Co.*, 61 N.E.2d 29 (1945), which also was Nevada. This factor seems to weigh in favor of the application of Nevada law. But even accepting the Porters' argument, this factor, at best, would be neutral, weighing equally in favor of the application of Nevada and Samoa law.

The location of the subject matter of the contract, Pal Air's shares in Samoa Air, is also contested. Pal Air places the stock in Nevada. The Porters contend that the shares "may have been located in Illinois[, having been] . . . pledged by Pace to the DuQuoin State Bank." Resp. at 2 (emphasis omitted). However, the Porters have attached essentially illegible exhibits to their response and have provided no explanation as to what the exhibits are supposed to show. Even taking the assertion in the response, that the shares were "pledged" to an Illinois Bank, at face value, there is no indication that this resulted in the delivery of shares to Illinois or any other change in the *location* of the shares from Nevada. Furthermore, even if we provide the Porters with every benefit of the doubt, inferring facts that are entirely absent from their affidavit and exhibits, placing the location of the shares in Illinois does nothing to help advance their argument for the application of Samoan law. Based upon the facts we are given, this factor probably weighs in favor of the application of Nevada law, and, at most, is neutral.

Finally, all parties have agreed that the last factor is split between Nevada and American Samoa, and, therefore, favors neither. As a group, the factors favor the application of Nevada law. In fact, no factor favors the application of American Samoa law. There is no overriding policy reason for us to apply American Samoa law instead of Nevada law. Thus, we will apply Nevada law to determine the existence and effect of a contract, which application will carry over to trial.

B. Oral Contract

---

[3] Pal Air denies the existence of a contract. *See infra*. However, for purposes of the conflict of law factors, we assume *arguendo* that a contract exists.

The Porters first allege that they made an oral contract with Bendall to buy all of the shares of Samoa Air stock from Pal Air, through Pace Aviation. Pal Air denies the contract and argues that even if such a contract existed, it would be unenforceable under Nevada's Statute of Frauds, which states that any "contract for the sale of securities is not enforceable . . . unless . . . [t]here is some writing signed by the party against whom enforcement is sought." Nev. Rev. Stat. § 104.8319(1). However, the statute continues by stating that a contract for the sale of securities can be enforced where "payment has been made." *Id.* at § 104.8319(2).

The Porters claim that $25,000 was wired to Pace Aviation, which was supposed to fulfill their end of a complicated, and as yet not fully clear, exchange of assets between Pal Air, Sandy Cox ("Cox"), Pace Aviation, Ltd. ("Pace Aviation"), a defendant in the companion case, CA No. 50-95, and the Porters, which would have resulted in the Porters owning 25,000 shares of Samoa Air stock formerly owned by Cox and Pal Air. Pal Air, in opposition, claims that the $25,000 was wired in payment for an airplane engine purchased from Pace Aviation by Samoa Air. While the details of this contract are unclear, and the documentary evidence appears to favor Pal Air's version of the facts, we must view the evidence in the light most favorable to the Porters. James Porter claims that the $25,000 was payment for stock and that Robert G. Bendall ("Bendall"), another defendant in CA No. 50-95, knew this. Whether an oral contract exists, what its terms were, and whether payment was made to overcome the Statute of Frauds are all genuine issues of material fact that must be determined at trial and preclude summary judgment on this issue.

C. Written Contract

The Porters also claim that they had a written contract between themselves, Pace Aviation, and Cox, which also involved Pal Air and Sierra Aviation Group, Inc., for the transfer of the same 25,000 shares of stock in Samoa Air from Pal Air and Cox to the Porters. Pal Air again denies the contract and asserts that any contract would have been unenforceable under the Statute of Frauds. Although the Porter's argument for a written contract appears even more specious than their argument for an oral contract, the same genuine issues of material fact nevertheless arise: does a contract exist, what are its terms, and does it satisfy the Statute of Frauds. These issues must be decided at trial, not in a motion for summary judgment.

D. Number of Shares Sold

Finally, Pal Air asserts that even if one of the above contracts existed, Pal Air was only obligated to sell 12,500 shares of stock, a like number to be sold to the Porters by Cox. Pal Air argues that this would still leave it holding 12,500 shares of Samoa Air stock. As artfully drawn as this

argument is, it does not eliminate all genuine issues of material fact. Assuming a contract exists, we do not know the terms of that contract. The Porters claim that, when Cox did not deliver his 12,500 shares to Bendall, Bendall was obliged to cover the missing shares with 12,500 additional shares of his own. Aff. of James A. Porter at 3. While we are highly doubtful that these were the terms of the contract, and though the Porters acted in a way that negatived this situation, this remains an outstanding question of fact, which is properly resolved at trial.

### III. Conclusion

Thus, viewing the evidence in the light most favorable to the Porters, as we must, we cannot grant summary judgment in Pal Air's favor. The motion for summary judgment is denied. The questions of whether Pal Air and the Porters contracted for the sale of Pal Air's stock in Samoa Air, what the terms of that contract were, whether that contract was executed, and whether the contract satisfied the Statute of Frauds will be examined at trial, and Nevada law will be applied to these issues.

We schedule the trial on August 29, 1996, at 9:00 a.m.

It is so ordered.