**JONES & McKNIGHT CORP., Plaintiff,**

v.

**BIRDSBORO CORPORATION,**
**Defendant.**

No. 69 C 2628.

United States District Court,
N. D. Illinois, E. D.

Dec. 2, 1970.

**40** .

John R. Porter, Gerhard E. Seidel, Peter M. Sfikas, Charles W. Herf, of Peterson, Lowry, Rall, Barber & Ross, Philip W. Tone, of Jenner & Block, Chicago, Ill., for plaintiff.

Richard E. Powell and Peter C. John, Isham, Lincoln & Beale, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

WILL, District Judge.

This is an action by Jones & McKnight Corporation against Birdsboro Corporation for damages arising out of Birdsboro's alleged breach of its contract to manufacture and deliver to plaintiff certain automated machinery and equipment. Plaintiff alleges that defendant did not design and manufacture the machinery and equipment in a workmanlike manner, that it failed to take remedial action to redesign and remake the machinery and equipment when necessary under the purchase agreement, and that plaintiff's production was therefore seriously interrupted and impaired, causing plaintiff to suffer substantial losses. The defendant moves for partial summary judgment as to the issues of whether certain clauses excluding the recovery of consequential damages are part of the contract and whether certain categories of plaintiff's requested damages must be denied as a matter of law because of their consequential nature.[1] On its part, Jones & McKnight is moving for leave to file an amended complaint adding a second count to its original complaint charging defendant with a wilful breach of its alleged duty to do promptly whatever was necessary to put the machinery and equipment in operating condition. For reasons stated below, we deny defendant's motion for partial summary judgment and grant plaintiff's motion for leave to file the amended complaint.

The initial issue presented by the motion for partial summary judgment concerns the scope of the parties' contract.

---

1. The categories of plaintiff's requested damages that defendant seeks to exclude in its motion for partial summary judgment include:
   (a) cost of down time;
   (b) cost of material ruined during production;
   (c) labor cost on ruined material;
   (d) value of lost production or lost profits;
   (e) excessive material and labor costs incurred in efforts to make plaintiff's mill operate efficiently; and
   (f) excessive overhead and costs in operating mill.

Although the delivery of the machinery and equipment to plaintiff and the plaintiff's payment therefor conclusively indicate the existence of a contract for sale, the precise terms of that contract do not readily appear from the parties' negotiations and subsequent writings. The complaint alleges an oral contract, whereas Birdsboro's answer and counterclaim allege a written contract. For purposes of its motion, however, Birdsboro contends that its "Form 64D, General Terms and Conditions," which included, *inter alia*, a clause limiting its liability for consequential damages, was incorporated into the contract irrespective of whether it was oral, written, or partially oral and written.[2]

The factual background of the contract negotiations is as follows. After prior meetings, an understanding between plaintiff and defendant was reached on June 4, 1968, as to the items of machinery and equipment to be manufactured by Birdsboro and the prices therefor. The parties are in agreement that they each contemplated that a written confirmation would be made of their accord. On July 23, 1968, Jones & McKnight received a written confirmation from Birdsboro which had attached to it and incorporated into it the Birdsboro General Terms and Conditions Form 64D. This confirmation stated that it had to be accepted within thirty days to become effective. It is undisputed that Jones & McKnight did not execute and return the July 23, 1968 letter from

Birdsboro. On August 6, 1969, Jones & McKnight sent a letter to defendant embodying the detailed order for machinery and equipment, requesting the return of a signed copy if acceptable. A portion of the letter stated:

"Confirming the discussion between your representative and our company on June 10, 1968, regarding the above orders, we are pleased to submit written verification of our verbal orders No. 2062 and 2063 * * *.

"It is understood that your General Terms and Conditions as set forth on your form 64D will govern * * *"

Birdsboro claims to have returned the requested signed copy of this letter, but plaintiff denies ever having received it.

■ For purposes of this summary judgment motion, Birdsboro contends that it is immaterial whether each party ever received the acknowledged return of its own memorandum from the other party. We agree. In an endeavor to bridge the legal abyss created in contract formation by industry's perennial battle-of-the-forms, the draftsmen of the Uniform Commercial Code included several provisions in the Act highly relevant to the type of situation before us.

Section 2–207(3) of the Code, Ill.Rev. Stat., Ch. 26, § 2–207(3), states:

"Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a con-

2. The portion of Birdsboro's Form 64D, General Terms and Conditions, relevant for the purposes of this motion is as follows:
"1. WARRANTY. The vendor warrants the equipment sold hereunder to be free from defects in material and workmanship for a period of twelve months from the date of delivery. In case of any such defects, Vendor's liability is limited to the replacement, f. o. b. Vendor's plant, of any material, parts or equipment which may be defective, provided that notice of any such defect is also given within such twelve-month period. Vendor shall, at its option, repair such defects or deliver new material, parts or equipment in place of that found defective. Vendor will make no allowance for repairs or alterations made by Purchaser unless made with the written consent of Vendor. Vendor assumes no liability for costs of disassembly and reassembly of defective material, parts or equipment. Vendor assumes no liability for consequential damages of any kind. Material, parts or equipment furnished by suppliers are guaranteed by Vendor only to the extent of the original manufacturer's express warranty to Vendor. There are no representations, warranties or guaranties express or implied, except as are expressly set forth herein."

tract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act."

Because no dispute is present that a contract in fact exists, the terms of the contract consist, at the least, of those terms on which the writings of the parties agree. As both parties have written and signed confirmatory memoranda recognizing that the terms of Birdsboro's General Terms and Conditions Form 64D were to govern the contract, we conclude that those terms are embodied and incorporated into the contract.

■ Section 2–202 of the Code, Ill. Rev.Stat., Ch. 26, § 2–202, supports this conclusion and obviates the necessity of determining, as plaintiff suggests we must do, whether the contract was oral or written. This section provides:

> "Terms with respect to which the confirmatory memoranda of the parties agree * * * with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented
>
> (a) by a course of dealing or usage of trade * * * or by course of performance * * *; and
>
> (b) by evidence of consistent additional terms."

Under the unambiguous wording of this provision, therefore, plaintiff can only clarify uncertain terms of the contract in light of usage of the trade or prove consistent additional terms. Plaintiff cannot, however, disavow a term of the contract by evidence of an alleged prior oral agreement when there exist subsequent confirmatory memoranda between the parties which are entirely consistent with each other. We hold, therefore, that the terms and conditions of Form 64D are included in the contract between Birdsboro and Jones & McKnight.[3]

Plaintiff contends that, even if Form 64D is part of the contract, the defendant's conduct subsequent to the numerous oral and written notices to it of defects and deficiencies in the design and workmanship of the machinery violated defendant's duty to institute corrective action within a reasonable time and constituted wilful and dilatory behavior amounting to an express repudiation of defendant's warranty obligation, thus destroying any benefits to the defendant under the warranty, particularly the limitation of liability for consequential damages. The plaintiff contends that its most substantial damages, the categories of damages that the defendant is seeking to exclude by way of this motion for partial summary judgment, resulted directly from the conduct of defendant in its wilful failure to correct the defects and deficiencies in the machinery for an extended period of time.

Plaintiff's theory that the contractual clause of the warranty limiting the defendant's liability must be disregarded when the defendant substantially breaches its limited obligation under that warranty is based upon § 2–719(2) of the Code, 12A Purdon's Pa.Stat.Ann. § 2–719(2). That section provides:

> "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act."

---

3. Once Form 64D is considered to be a portion of the parties' agreement, Pennsylvania law becomes the governing law of the contract. Paragraph 8 of Form 64D states: " * * * the contract is to be construed as though made in and to be performed in the Commonwealth of Pennsylvania and is to be governed by the laws of Pennsylvania in all respects without reference to the laws of any other state or nation." This provision is valid and effective in Illinois, Reighley v. Continental Illinois National Bank, 390 Ill. 242, 61 N.E.2d 29 (1945), and accordingly Pennsylvania law is applicable. However, as both Illinois and Pennsylvania have enacted the Uniform Commercial Code, the only divergence between the controlling law of the two states will be found in court interpretations of the Code.

The plaintiff thus suggests that, because of the alleged failure of defendant to honor its limited liability under the warranty, the exclusive remedy has failed of its essential purpose and the warranty's limitation of remedy must be disregarded.

■ The issue presented by this aspect of this litigation is whether a wilful breach by a seller of its duties under its warranty negatives a second clause of that warranty under which the buyer's remedy is limited to an exclusive course of action. Research and the parties indicate that this question is one of first impression in Pennsylvania. When a court is obligated to follow state law and a presented issue is one of first impression in the state, the federal court may not, with but few exceptions, stay the proceedings until a determination of the point may be had in the applicable state courts. Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943). Rather, the federal court must, notwithstanding the lack of a controlling state decision, apply the rule it believes the courts of the state would apply if the specific question were put to them. Stool v. J. C. Penney Co., 404 F.2d 562 (5 Cir. 1968); Costello v. Schmidlin, 404 F.2d 87 (3 Cir. 1968). With no state court decisions to guide it, the federal court becomes obligated to arrive at the decision which reason dictates, with the faith that the state courts would arrive at the same decision. Insurance Company of North America v. English, 395 F.2d 854 (5 Cir. 1968).

The issue of whether under § 2–719(2) of the Uniform Commercial Code the alleged repudiation by a seller of its obligation under its warranty likewise deprives the seller of benefits under that warranty has apparently been decided in only one reported case. In Adams v. J. I. Case Company, 125 Ill.App.2d 388, 261 N.E.2d 1 (4 Dist.1970), the court, faced with a warranty almost identical to the one given by Birdsboro in this litigation, held inapplicable the exclusion of consequential damages in a warranty that limited the seller's liability to replace-ment or repair of the defective product. In that case, as here, the buyer alleged that the sellers were wilfully dilatory in making the needed repairs. The court stated:

> "Had (the sellers) reasonably complied with their agreement contained in the warranty (that they would repair any defects), they would be in a position to claim the benefits of their stated limited liability and to restrict plaintiff to his stated remedy. The limitations of remedy and of liability are not separable from the obligations of the warranty. Repudiation of the obligations of the warranty destroy (sic) its benefits * * * It should be obvious that (the sellers) cannot at once repudiate their obligation under their warranty and assert its provisions beneficial to them." 261 N.E.2d 1, 7.

In referring to § 2–719(2) of the Code, the court readily found the failure of the exclusive remedy provided for in the warranty in the seller's alleged wilfully dilatory, careless or negligent conduct in failing to comply with their obligations under the warranty.

■■ We agree with the above rationale. Although the plaintiff-buyer purchased and accepted the machinery and equipment with the apparent knowledge that the seller had properly limited its liability to repair or replacement, and although the plaintiff does not allege any form of unconscionability in the transactions which led to the purchase, plaintiff also was entitled to assume that defendants would not be unreasonable or wilfully dilatory in making good their warranty in the event of defects in the machinery and equipment. It is the specific breach of the warranty to repair that plaintiff alleges caused the bulk of its damages. This Court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty, which alleged re-

pudiation has caused the very need for relief which the defendant is attempting to avoid. If the plaintiff is capable of sustaining its burden of proof as to the allegations it has made, the defendant will be deemed to have repudiated the warranty agreement so far as restricting plaintiff's remedies, and the exclusive remedy provision of the contract will be deemed under the circumstances to have failed of its essential purpose, thus allowing plaintiff the general array of remedies under the Code. 12A Purdon's Pa.Stat.Ann. § 2–719(2).

In opposition to the above conclusion, defendant submits two contentions. First, it suggests that the exclusive or limited *remedy* sections of the Code (§§ 2–719(1) (a), (b) and 2–316) are not involved in its motion, but only the exclusion of consequential *damages*, authorized under § 2–719(3). We agree with defendant that the exclusion of consequential damages involved herein is authorized under § 2–719(3). However, § 2–719(2) refers in all cases to the failure of an exclusive remedy, irrespective of the fact that the remedy may be generally authorized under the Code. The fact that the exclusion of consequential damages is authorized under § 2–719(3) does not lead to the conclusion that § 2–719(2) was not intended to cover the situation where, as here, a seller limits its liability to one exclusive, albeit authorized, remedy. On the contrary, the Official Comment on this Section speaks in broad and general terms: " * * * under (§ 2–719(2)), when an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article." The rationale enunciated in this Comment manifestly indicates that the alleged failure of the defendant to meet its warranty obligations should deprive it of the benefits of the limited remedy clause.

Defendant also contends that this Court should not follow the reasoning of Adams v. J. I. Case Company, *supra*, because that case refused to follow Keystone Diesel Engine Co. v. Irwin, 411 Pa. 222, 191 A.2d 376 (1963), a Pennsylvania case which is binding on us although not upon the *Adams* court. This argument is of no relevance to the question of the warranty exclusion of consequential damages because the *Adams* court failed to follow *Keystone* only in connection with the tests to be used in measuring consequential damages under the general provisions of the Code. *Keystone* involved §§ 2–714, 2–715 of the Code, not § 2–719(2). The question of the effect of partial repudiation of a warranty was not involved in *Keystone*. Defendant's argument on this point, therefore, is irrelevant.

The damages under the general provisions of the Code to which the plaintiff will be entitled if the warranty's limitation of remedy is disregarded are delineated by §§ 2–714, 2–715, 12A Purdon's Pa.Stat.Ann. §§ 2–714, 2–715. These sections provide:

2–714. "(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

"(3) In a proper case any incidental and consequential damages under the next section may also be recovered."

2–715. "(2) Consequential damages resulting from the seller's breach include (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; * *"

Dispute exists between various courts as to the "true" interpretation of these provisions, with few jurisdictions having definitively decided when consequential damages will be authorized. The Supreme Court of Pennsylvania, however, has given an authoritative inter-

pretation of these provisions, which interpretation is binding upon this Court under the terms of the parties' contract.

■ In *Keystone, supra,* the Pennsylvania Supreme Court enunciated its test for allowing consequential damages under the general damage provisions of the Code. Referring to § 2–714(2), the Court said: " 'Special circumstances' entitling the buyer to damages in excess of the difference between the values as warranted and the value as accepted exist where the buyer has communicated to the seller at the time of entering into the contract sufficient facts to make it apparent that the damages subsequently claimed were within the reasonable contemplation of the parties." 191 A.2d 376, 378. Under Pennsylvania interpretation of the general Code provisions dealing with damages, therefore, the plaintiff, in order to collect damages in excess of the difference between the value of the goods as warranted and as accepted, must prove that the seller was on notice of the fact that the plaintiff would hold it responsible for any loss of profit or loss due to "down time" arising from the inability to use the machinery and equipment in question.

■ In the present posture of this litigation, the defendant's motion for partial summary judgment is premature. Factual questions exist concerning the issue of whether the defendant lost its warranty protection of limited liability by repudiating its warranty obligations through wilfully dilatory action. And if the plaintiff is capable of proving such allegations, the factual question concerning the authorized scope of damages under *Keystone* remains, i. e., what damages were actually within the reasonable contemplation of the parties. Because of the existence of these factual questions, the defendant's motion for partial summary judgment is denied.

The plaintiff's motion for leave to file its amended complaint is an attempt to clarify its original complaint and add to it allegations which embody the theory that defendant was under a clear duty to honor its limited obligation under the warranty and that the defendant's wilful failure to do so comprises an additional basis for liability on the part of defendant.

As Rule 15(a), Fed.R.Civ.P., requires that leave to file an amended complaint should be freely given when justice so requires, and as we have already recognized certain legal ramifications from the allegations that the defendant was wilfully dilatory in honoring its warranty obligations, we will grant plaintiff's motion for leave to file an amended complaint.

An order consistent with the foregoing will be entered.