Docket No. 98813.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

SHANTE RAZOR, Appellee, v. HYUNDAI MOTOR AMERICA, Appellant.

*Opinion filed February 2, 2006.*

JUSTICE FREEMAN delivered the judgment of the court, with opinion.

Chief Justice Thomas and Justices McMorrow, Fitzgerald, Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

## OPINION

This appeal involves the federal Magnuson-Moss Warranty–Federal Trade Commission Improvement Act (Act) (15 U.S.C. §2301 *et seq.* (2000)) and the Illinois Uniform Commercial Code (UCC) (810 ILCS 5/1–101 *et seq.* (West 2000)). The only issues raised concern the propriety of the damages awarded to the plaintiff. The primary question is whether the circuit court acted properly in refusing to enforce a contractual clause prohibiting the award of consequential damages. There is also a sufficiency of the evidence challenge to the court's award of warranty damages. We affirm in part, reverse in part, and remand.

## BACKGROUND

Plaintiff Shante Razor purchased a new Hyundai Sonata from Gartner Buick, Inc. (Gartner), on August 4, 2001. At the time she purchased the car, plaintiff also bought an optional remote starter and alarm system from an "options" booklet shown to her by the Gartner salesman. Gartner subcontracted the installation of this starter to Professional Sound Installers (ProSound). ProSound did not install it on the date plaintiff purchased her vehicle, but a few weeks later, on August 30, 2001.

The Sonata was the first new car plaintiff had ever purchased. It came with a five-year, 60,000-mile warranty, a copy of which was introduced into evidence. In pertinent part, the warranty provided as follows:

"WHAT IS COVERED

Repair or replacement of any component originally manufactured or installed by Hyundai Motor Company or Hyundai Motor America (HMA) that is found to be defective in material or workmanship under normal use and maintenance, except any item specifically referred to in the section 'What is Not Covered.'

\* \* \*

WHAT IS NOT COVERED

\* Damage or failure resulting from:

–Negligence of proper maintenance as required in the Owner's Manual.

–Misuse, abuse, accident, theft, water/flooding or fire.

\* \* \*

– Any device and/or accessories not supplied by Hyundai.

\* \* \*

\*INCIDENTAL OR CONSEQUENTIAL DAMAGES, INCLUDING WITHOUT LIMITATION, LOSS OF TIME, INCONVENIENCE, LOSS OF USE OF THE VEHICLE, OR COMMERCIAL LOSS.

\*The duration of any implied warranties, including those for MERCHANTABILITY and FITNESS FOR A PARTICULAR PURPOSE, are limited to the duration of this limited warranty.

Some states do not allow limitations on how long an

implied warranty lasts, or the exclusion or limitation of incidental and consequential damages, so the limitations or exclusions set forth regarding this limited warranty may not apply to you. You may also have other rights which vary from state to state."

In late September 2001, plaintiff began experiencing difficulties with the vehicle. On September 26, plaintiff had the vehicle towed to Gartner for service because it failed to start when she turned the key. She experienced the same problem and again had the vehicle towed to Gartner for service on October 6, October 16, and October 25. On the latter occasion, Gartner kept the vehicle for more than two weeks, providing plaintiff with a rental car to use during the time the vehicle was out of her possession. Nevertheless, the problem happened again on November 21, the day before Thanksgiving, when plaintiff had taken the day off from work to go shopping for the holiday. After a technician came to her home and was himself unable to start the car, the vehicle was yet again towed to Gartner for attempted repairs.

Sometimes after being towed to Gartner the vehicle started normally, other times it did not. Gartner technicians attempted various different repairs on the different occasions that the car appeared before them, including replacing the starter, replacing the "ECU power relay," replacing the remote starter with an updated system, and replacing the "trans range switch" and "starter relay." Additionally, after the October 25 no-start, when the vehicle was kept for more than two weeks, ProSound removed the remote starter it had originally installed on plaintiff's vehicle and replaced it with an updated model. Plaintiff was not charged for any of the attempted repairs.

In December 2001, plaintiff filed suit against defendant, Hyundai Motor America (Hyundai). Plaintiff made claims against Hyundai pursuant to the Magnuson-Moss Warranty Act (15 U.S.C. §2301 *et seq.* (2000)) for breach of written warranty and breach of implied warranty of merchantability. Plaintiff also alleged that Hyundai had violated the Illinois New Vehicle Buyer Protection Act (815 ILCS 380/1 *et seq.* (West 2000)).

The case initially went to arbitration. The arbitration panel found in plaintiff's favor, and entered an award of $6,500, plus attorney fees and costs. Hyundai rejected this award and demanded trial.

The case went to trial in February 2003. Plaintiff was the sole witness for her case, and most of the above undisputed facts are drawn from her testimony. In addition, plaintiff testified that she never saw the actual warranty until after she had purchased the car, because the warranty was contained in the owner's manual, which she saw for the first time in the glove box of her vehicle when she drove it off the lot. Plaintiff's purchase contract, a copy of which was introduced into evidence, does not appear to contain or refer to the vehicle warranty. When asked on cross-examination if she had seen the warranty on a placard at Gartner Hyundai, plaintiff testified that she had not. Plaintiff testified that she had performed all required maintenance on her car, had never been in an accident or been the victim of vandalism, and that no one other than Gartner Hyundai had ever performed any repairs on the vehicle.

During plaintiff's direct examination, defense counsel objected when plaintiff's counsel inquired regarding her purchase of prior automobiles. During a lengthy sidebar, counsel explained that he was attempting to lay a foundation in order to ask her how much the car's value to her had decreased because of the problems she had with it. The court ruled that plaintiff could not answer such a question. The court indicated that plaintiff could testify "as to what her feelings were, what her frame of mind was and the impact of the slow [*sic*] start situation on her personal feelings. *** But as to 'the value of the vehicle would have been such and such because of the no start conditions,' I don't see how you're going to go that far with it." Plaintiff was permitted to testify that the purchase price of her Sonata was $16,522, and that she would eventually have paid a total of $21,249 for the car, including finance charges.

Plaintiff testified that the vehicle did not provide her the type of transportation she expected. She testified, "[I]t's a brand new car. I expected it to be perfect, flawless or minimal problems, certainly not the ones that I encountered here." She testified that she would not purchase the same vehicle today, because it was "proven unreliable," and she would not today pay the price she had originally paid for the vehicle, because "given the problems that this vehicle – that I have had with this vehicle or the problems the vehicle has had, that's like a used car. I would not pay that for a new car with used problems as it were." Plaintiff also testified that the problems she had with the car had caused her considerable inconvenience, including missing days

˘4˘

of work. However, on cross-examination, plaintiff admitted she was still driving the car at the time of trial–May 2003–and had not experienced any difficulties with it since December 2001.

Plaintiff offered her exhibits into evidence and rested. Hyundai moved for a directed verdict, which the court denied in its entirety. During argument on the motion, the court initially ruled that Hyundai's disclaimer of incidental and consequential damages was not unconscionable, but shortly thereafter the court reversed itself and ruled that the disclaimer was unconscionable and would not be enforced. When defense counsel inquired of the court as to the basis for its ruling that the disclaimer was unconscionable, the court responded:

> "THE COURT: The number of attempts that the plaintiff attempted for repairs. The fact that the plaintiff needed, used or intended to use the vehicle for transportation to and from work. The fact that the plaintiff was unable to use the vehicle for the time period in question for it's [*sic*] intended use."

After the court denied Hyundai's motion for a directed verdict, the defense called its sole witness, Randy Wood. Wood is treasurer and part owner of ProSound, the company which installed plaintiff's alarm and remote starter system. He testified that ProSound had inspected the system installed on plaintiff's vehicle on more than one occasion, and no problem was ever found. Although ProSound did replace plaintiff's system with the newest model, this was for customer satisfaction purposes only, because ProSound never found anything wrong with plaintiff's system. He did admit on redirect examination that plaintiff's vehicle "may have" had a weak signal coming through its "tack [*sic*] wire," and if that condition existed it could cause problems for the ProSound system. Wood also testified that the system could itself prevent the car from starting, if one attempted to start it with the key after locking the car with the remote control.

After the defense rested, Hyundai renewed its motion for a directed verdict, including specifically arguing that the court should not have reversed its initial conclusion regarding the enforceability of the consequential damages disclaimer. The court denied Hyundai's motions and submitted the case to the jury.

The jury returned a verdict for plaintiff on the breach of warranty claims, awarding her $5,000 in warranty damages for the diminished

value of the Sonata due to the defects, and $3,500 in consequential damages for aggravation and inconvenience and loss of use. The jury also answered "yes" to a special interrogatory which asked, "Did plaintiff prove the aftermarket remote starter-alarm system was not the cause of the no-start condition?" The jury found in defendant's favor, however, on plaintiff's claim under the New Vehicle Buyer Protection Act. The court awarded plaintiff $12,277 in attorney fees and costs.

The appellate court affirmed in all respects. 349 Ill. App. 3d 651.

Hyundai petitioned for leave to appeal to this court (see 155 Ill. 2d R. 315(a)), which we granted.

## ANALYSIS

Before this court the issues have been pared down. Hyundai neither challenges the jury's conclusions regarding causation nor contends that plaintiff failed to prove that the warranty failed of its essential purpose. Plaintiff does not cross-appeal the jury verdict in Hyundai's favor on her New Vehicle Buyer Protection Act claim. Neither party raises any issues regarding the circuit court's conduct of the trial.

Rather, the arguments now focus exclusively on damages. Hyundai first argues that the circuit court erred in refusing to enforce the contractual exclusion of incidental and consequential damages. Hyundai argues that the mere fact that its warranty failed of its essential purpose does not invalidate the consequential damages disclaimer, and contends that plaintiff introduced no evidence to support the circuit court's ruling that the disclaimer should not be enforced. Second, Hyundai contends that there was insufficient evidence to support the jury's warranty damage award. Finally, Hyundai argues that if this court reverses both damage awards, we must also reverse the circuit court's award of fees and costs. Plaintiff raises no additional arguments. Thus, these are the only issues before us.

### I. Enforceability of Hyundai's Disclaimer of Incidental/Consequential Damages

The main issue before this court is the enforceability of Hyundai's

disclaimer of incidental and consequential damages. Hyundai argues that the disclaimer is independent of the limited remedy, and the disclaimer may stand even if its limited remedy failed of its essential purpose. Hyundai contends that the disclaimer may be overridden only if it is itself unconscionable, a standard which Hyundai argues has not been met in the instant case. Plaintiff responds that the disclaimer should fall with the limited warranty, and contends that even if this court finds them to be severable, the disclaimer in this case was unconscionable.

### A. *"Independent" vs. "Dependent" Approach to Provisions Limiting Remedy and Excluding Consequential Damages*

As previously noted, plaintiff's claim was brought under the Magnuson-Moss Warranty Act (15 U.S.C. §2301 *et seq.* (1994)). Under the Act, consumers who have been damaged by any warrantor's failure to comply with its obligations under a written warranty may bring suit "in any court of competent jurisdiction in any State or the District of Columbia." 15 U.S.C. §2310(d)(1)(A) (1994).

The Act itself does not determine the enforceability of the consequential damages disclaimer, however. The Act does supersede state law, but only to the extent that state law is inconsistent with the Act. 15 U.S.C. §2311 (1994); see *Sorce v. Naperville Jeep Eagle*, 309 Ill. App. 3d 313, 323 (1999). The warranty at issue in this case was a limited warranty, and the Act does not set out requirements for limited warranties.[1] Rather, the Act merely prescribes certain requirements with which warranties must comply in order to be called "full" warranties. See 15 U.S.C. §2303(a) (1994) (a warranty which meets the standards set forth in section 4 of the Act (15 U.S.C. §2304 (1994)) "shall be conspicuously designated a 'full (statement of duration) warranty,' " and a warranty which does not meet the standards set out in section 4 of the Act "shall be conspicuously designated a 'limited warranty' ").

---

[1]The Act does permit the Federal Trade Commission to establish general disclosure requirements for the terms and conditions of all warranties, *e.g.*, that they must clearly identify the warrantors, the warrantees, the products or parts covered, etc. See 15 U.S.C. §2302 (1994). However, the Act itself does not directly establish any such disclosure requirements, nor do the parties raise any arguments regarding any requirements the FTC may have established.

Accordingly, to determine the enforceability of a consequential damages disclaimer in a limited warranty, we look to state law. See *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 62 (2002); *Sorce*, 309 Ill. App. 3d at 325. In Illinois, the sale of goods is governed by article 2 of the Uniform Commercial Code (UCC). 810 ILCS 5/1–101 *et seq.* (2000). Central to this case is section 2–719 of the UCC, which governs "Contractual modification or limitation of remedy":

> "(1) Subject to the provisions of subsections (2) and (3) of this Section and of the preceding section on liquidation and limitation of damages,
>
> > (a) the agreement may provide for remedies in addition to or in substitution for those provided in this Article and may limit or alter the measure of damages recoverable under this Article, as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of non-conforming goods or parts; and
> >
> > (b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.
>
> (2) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.
>
> (3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." 810 ILCS 5/2–719 (West 2000).

In this case, Hyundai's limited warranty contained both a limitation of remedy and an exclusion of consequential damages. The warranty expressly limited the buyer's remedies to repair and replacement of nonconforming parts, as permitted under section 2–719(1)(a). However, the warranty additionally provided that incidental or consequential damages were "not covered," as permitted under section 2–719(3).

Plaintiff claimed–and the jury found–that the Hyundai limited remedy had failed of its essential purpose because of the persistence

of the no-start problem with plaintiff's car. Hyundai does not question this factual determination in this appeal. Thus, according to section 2–719(2) of the UCC, plaintiff was entitled to remedy "as provided in this Act." 810 ILCS 5/2–719(2) (West 2000). See also 810 ILCS Ann. 5/2–719, Uniform Commercial Code Comment 1, at 488 (Smith-Hurd 1993) ("under subsection (2), where an apparently fair and reasonable clause because of circumstances fails in its purpose or operates to deprive either party of the substantial value of the bargain, it must give way to the general remedy provisions of this Article").

This does not end the inquiry insofar as consequential damages are concerned, however. Subsection (3) of section 2–719 is part of "this Act"–*i.e.*, the UCC–and subsection (3) permits a seller to limit or exclude consequential damages unless to do so would be unconscionable. It still must be determined, therefore, whether a limited remedy failing of its essential purpose defeats a disclaimer of consequential damages.

There are two main schools of thought on the issue. Some courts and commentators conclude that a limited remedy failing of its essential purpose operates to destroy any limitation or exclusion of consequential damages in the same contract. This approach is known as the "dependent" approach, because the enforceability of the consequential damages exclusion depends on the survival of the limitation of remedy.

Our appellate court issued one of the seminal cases for the dependent approach, *Adams v. J.I. Case Co.*, 125 Ill. App. 2d 388 (1970). There, the plaintiff purchased a tractor, pursuant to a purchase agreement which limited his remedy to repair and replacement and also disclaimed consequential damages. The tractor had severe mechanical problems and was in a repair shop for over a year. Plaintiff filed suit, seeking consequential damages for the business he claimed to have lost because defendants were "wilfully dilatory or careless and negligent in making good their warranty." The court concluded:

> "The limitations of remedy and of liability are not separable from the obligations of the warranty. Repudiation of the obligations of the warranty destroys its benefits. The complaint alleges facts that would constitute a repudiation by the defendants of their obligations under the warranty, that repudiation consisting of their wilful failure or their careless

and negligent compliance. It should be obvious that they cannot at once repudiate their obligation under their warranty and assert its provisions beneficial to them." *Adams*, 125 Ill. App. 2d at 402-03.

In defense of the dependent approach, the United States District Court for the Northern District of Illinois has reasoned:

> "[P]laintiff also was entitled to assume that defendants would not be unreasonable or wilfully dilatory in making good their warranty in the event of defects in the machinery and equipment. It is the specific breach of the warranty to repair that plaintiff alleges caused the bulk of its damages. This Court would be in an untenable position if it allowed the defendant to shelter itself behind one segment of the warranty when it has allegedly repudiated and ignored its very limited obligations under another segment of the same warranty, which alleged repudiation has caused the very need for relief which the defendant is attempting to avoid." *Jones & McKnight Corp. v. Birdsboro Corp.*, 320 F. Supp. 39, 43-44 (N.D. Ill. 1970) (applying Illinois law).

See also, *e.g.*, *Givan v. Mack Truck, Inc.*, 569 S.W.2d 243, 247 n.7 (Mo. App. 1978) (and cases cited therein); *Pierce v. Catalina Yachts*, 2 P.3d 618, 622 n.14 (Alaska 2000) (collecting cases).

Plaintiff suggests that the dependent approach is followed by a majority of jurisdictions to consider the issue. While this may have been true 15 to 20 years ago[2] (see D. Goetz, *Special Project: Article Two Warranties in Commercial Transactions: An Update*, 72 Cornell L. Rev. 1159, 1307 (1987) ("A majority of cases have answered correctly that the failure of an exclusive remedy voids the consequential damages exclusion clause")), it is no longer the case. Rather, the majority of jurisdictions now follow the other of the two main approaches, the "independent" approach. 1 E. Farnsworth, Farnsworth on Contracts §4.28(a), at 605-06 (3d ed. 2004) ("some

---

[2]We note that all of the law review articles and all but one of the non-Illinois court decisions plaintiff cites were decided in 1990 or before. The sole post-1990 foreign authority plaintiff cites, *Bishop Logging Co. v. John Deere Industrial Equipment Co.*, 317 S.C. 520, 455 S.E.2d 183 (1995), did not follow the dependent approach, but rather the "case-by-case" approach. *Bishop Logging*, 317 S.C. at 533-37, 455 S.E.2d at 191-93.

courts have gone so far as to hold that if UCC 2–719(2) applies, related limitations on remedies should all fall like a house of cards, so that a provision barring recovery of consequential damages would also be invalidated. However, most courts have rejected this view"); *Pierce*, 2 P.3d at 622 ("the majority of jurisdictions view these subsections to be independent") (collecting cases). This school of thought holds that a limitation of consequential damages must be judged on its own merits and enforced unless unconscionable, regardless of whether the contract also contains a limitation of remedy which has failed of its essential purpose.

A representative case adopting the independent approach is *Chatlos Systems v. National Cash Register Corp.*, 635 F.2d 1081 (3d Cir. 1980) (applying New Jersey law). There, the court rejected the dependent approach, holding:

> "[T]he better reasoned approach is to treat the consequential damage disclaimer as an independent provision, valid unless unconscionable. This poses no logical difficulties. A contract may well contain no limitation on breach of warranty damages but specifically exclude consequential damages. Conversely, it is quite conceivable that some limitation might be placed on a breach of warranty award, but consequential damages would expressly be permitted.

> The limited remedy of repair and a consequential damages exclusion are two discrete ways of attempting to limit recovery for breach of warranty. [Citations.] The [UCC], moreover, tests each by a different standard. The former survives unless it fails of its essential purpose, while the latter is valid unless it is unconscionable. We therefore see no reason to hold, as a general proposition, that the failure of the limited remedy provided in the contract, without more, invalidates a wholly distinct term in the agreement excluding consequential damages. The two are not mutually exclusive." *Chatlos Systems*, 635 F.2d at 1086.

See also *Pierce*, 2 P.3d at 622-23 (adopting independent approach), 622 n.16 (collecting cases).

A third approach, "applied relatively infrequently," is the "case by case" approach. D. Hagen, Note, *Sections 2–719(2) & 2–719(3) of the Uniform Commercial Code: The Limited Warranty Package &*

*Consequential Damages*, 31 Val. U.L. Rev. 111, 131 (1996). Under this approach, "[a]n analysis to determine whether consequential damages are warranted must carefully examine the individual factual situation including the type of goods involved, the parties and the precise nature and purpose of the contract." *AES Technology Systems, Inc. v. Coherent Radiation*, 583 F.2d 933, 941 (7th Cir. 1978).

Neither of the parties to this appeal argues in favor of the case-by-case approach, which has been criticized as "not supported by the [UCC] or its official comments." 31 Val. U.L. Rev. at 132. The authorities espousing it have sometimes confused it with the "independent" approach (see, *e.g.*, *Smith v. Navistar International Transportation Corp.*, 957 F.2d 1439, 1443-44 (7th Cir. 1992) (erroneously stating that *Chatlos Systems* had adopted the case-by-case approach). Moreover, although one of the factors cited in favor of the case-by-case approach is that it "allows some measure of certainty" (*Smith*, 957 F.2d at 1444), it has been observed that it in fact "provides *less* predictability than the dependent or independent approaches." (Emphasis added.) 31 Val. U. L. Rev. at 131.

Additionally, notwithstanding that the case-by-case approach might appear to tread a middle ground between the dependent approach (which is generally more favorable for buyers) and the independent approach (which is generally more favorable for sellers), this is not necessarily so. In *AES Technology*, where the case-by-case approach originated, the contract at issue contained no disclaimer or limitation of consequential damages, only a limitation of remedy. The court affirmed the trial court's conclusion that the limited remedy had failed of its essential purpose. *AES Technology*, 583 F.2d at 940. However, the court inferred a consequential damage disclaimer from the limitation of remedy (*AES Technology*, 583 F.2d at 941 n.9) and proceeded to enforce that inferred disclaimer against the buyer even though the limited remedy had failed of its essential purpose, because "the express provisions of the contract and the factual background" indicated that the parties intended for the buyer to "bear the risk of the project" (*AES Technology*, 583 F.2d at 941). The court inferred a consequential damages disclaimer where none existed, struck the language from which the disclaimer was inferred, then enforced the disclaimer against the buyer anyway, based on the court's understanding of "the factual background." This result could not have been reached under either the dependent or independent approach, and we find the analysis difficult to reconcile with the UCC itself.

We find the case-by-case approach injects uncertainty into the UCC, an area of the law in which uniformity and certainty are highly valued. See 810 ILCS 5/1–102(2)(c) (West 2000); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 491 (1996). It leads to results which are difficult to reconcile with the provisions of the UCC, and has been criticized as having no basis in the UCC or its comments. 31 Val. U.L. Rev. at 132. We decline to adopt it.

Rather, we agree with the reasoning in *Chatlos Systems*, and adopt the independent approach. The independent approach is more in line with the UCC and with contract law in general. Nothing in the text or the official comments to section 2–719 indicates that where a contract contains both a limitation of remedy and an exclusion of consequential damages, the latter shares the fate of the former. See J. Eddy, *On the "Essential" Purposes of Limited Remedies: The Metaphysics of UCC 2–719(2)*, 65 Cal. L. Rev. 28, 92 (1977) (failure of essential purpose is separate and independent from validity of consequential damage disclaimer); E. Eissenstat, Note, *Commercial Transactions: UCC §2–719: Remedy Limitations and Consequential Damage Exclusions*, 36 Okla L. Rev. 669, 677 (1983) ("a consequential damages disclaimer should be governed by its own [UCC] standard of unconscionability, independent of whether a limited remedy has failed"). To the contrary, as noted in *Chatlos Systems*, the different standards for evaluating the two provisions–"failure of essential purpose" versus "unconscionability"–strongly suggest their independence. See also 1 White and Summers' Uniform Commercial Code §12–10(c), at 668 (4th ed. 1995) (endorsing the independent approach as most in accord with considerations of freedom of contract).

When a contract contains a limitation of remedy but that remedy fails of its essential purpose, it is as if that limitation of remedy does not exist for purposes of the damages to which a plaintiff is entitled for breach of warranty. See 810 ILCS 5/2–719(2) (West 2000) ("remedy may be had as provided in this Act"). When a contract contains a consequential damages exclusion but no limitation of remedy, it is incontrovertible that the exclusion is to be enforced unless unconscionable. 810 ILCS 5/2–719(3) (West 2000). Why, then, would a limitation of remedy failing of its essential purpose destroy a consequential damages exclusion in the same contract? We see no valid reason to so hold.

Indeed, the dependent approach operates to nullify all consequential damage exclusions in contracts which also contain limitations of remedy. For if the limited remedy fails of its essential purpose, the consequential damages exclusion would also automatically fall–regardless of whether it is unconscionable–and if the limitation of remedy does not fail of its essential purpose, the buyer would not be entitled to consequential damages in any event, he would be entitled only to the specified limited remedy.

The two provisions–limitation of remedy and exclusion of consequential damages–can be visualized as two concentric layers of protection for a seller. What a seller would most prefer, if something goes wrong with a product, is simply to repair or replace it, nothing more. This "repair or replacement" remedy is an outer wall, a first defense. If that wall is breached, because the limited remedy has failed of its essential purpose, the seller still would prefer at least not to be liable for potentially unlimited consequential damages, and so he builds a second inner rampart as a fallback position. That inner wall is higher, and more difficult to scale–it falls only if unconscionable.

The independent approach has not been immune to criticism, of course. The Eighth Circuit has rejected the independent approach under Minnesota law, based on the concern that "a buyer when entering into a contract does not anticipate that the sole remedy available will be rendered a nullity, thus causing additional damages." *Soo Line R.R. Co. v. Fruehauf Corp.*, 547 F.2d 1365, 1373 (8th Cir. 1977) (applying Minnesota law). Additionally, one commentator has chastised the independent approach for "rel[ying] on imprecise assumptions about the parties' intent and an unpersuasive interpretation of section 2–719." K. Murtagh, Note, *UCC Section 2–719: Limited Remedies and Consequential Damage Exclusions*, 74 Cornell L. Rev. 359, 362 (1989) (concluding that independent approach is "inherently weak"). This article suggests that by engaging in "literal construction of the parties' contract," the independent approach "encourages overly formalistic drafting," which "unfairly favors the party who can afford sophisticated bargaining techniques to ensure the use of his contract terms." 74 Cornell L. Rev. at 363. The article also contends that it is erroneous to conclude that the parties intend to shift the risk of consequential loss to the buyer, because "[t]he language structure itself does not indicate that the parties even considered the possibility of the ineffective limited

remedy." 74 Cornell L. Rev. at 364. *Adams* and *Jones & McKnight*, two of the earliest cases adopting the dependent approach, implicitly concluded that the independent approach was simply unfair to the buyer. See *Adams*, 125 Ill. App. 2d at 402-03; *Jones & McKnight*, 320 F. Supp. at 43-44.

We recognize these objections to the independent approach, but do not find them compelling. The reasoning in *Adams* and *Jones & McKnight*, for example, is based on the seller's failure to perform being willful. This incorporates considerations of bad faith on the part of the seller. As we discuss below, the seller's bad faith is a possible basis for finding enforcement of a limitation of consequential damages to be unconscionable. However, the dependent approach strips away limitations of consequential damages whenever a limited remedy fails of its essential purpose, without regard to the good or bad faith of the seller, which we believe goes too far.

The objections to the independent approach in *Soo Line* and the law review article noted above are similarly unpersuasive. Both argue that the independent approach is unfair because the buyer may not intend to renounce consequential damages when the limited remedy has failed of its essential purpose. *Soo Line*, 547 F.2d at 1373; 74 Cornell L. Rev. at 364. But this seems to ignore the plain language of the contract in a fundamental way–for if the buyer does not intend to renounce consequential damages when the limited remedy has failed, in what context *could* the disclaimer of consequential damages operate? As noted above, we believe this is a fundamental defect in the dependent approach, that it renders the disclaimer of consequential damages an utter nullity. If a limited remedy has *not* failed of its essential purpose, that is of course the buyer's only remedy, by definition–this is what it means to have a limited remedy. So in this circumstance a disclaimer of limited damages would be of no effect because it would be redundant. If, as the above critics argue, the disclaimer of limited damages ought not to be enforced when the limited remedy *has* failed of its essential purpose, the language would never have any effect. Moreover, to the extent that the independent approach encourages parties to pay attention in the drafting process (see 74 Cornell L. Rev. at 363), we see this as a point in favor of the independent approach, rather than the contrary.

Plaintiff objects that Illinois has always followed the dependent

approach, and for this court now to endorse the independent approach would unnecessarily reverse "thirty-five (35) years of commercial law in the State of Illinois law that has repeatedly embraced the 'dependent' approach." We disagree with the premise of this argument. It is true that *Adams* endorsed the dependent approach over 35 years ago. See *Adams*, 125 Ill. App. 2d at 402-03. But intervening case law from our appellate court has not consistently followed the dependent approach. More recently, for instance, our appellate court stated:

> "In remedy limitation cases, the court must make three inquiries:
>
>> '(1) whether the contract limited the remedy to repair or replacement; (2) whether, if the remedy were so limited, it failed of its essential purpose; and (3) whether, *if the limited remedy failed of its essential purpose*, consequential damages may be recovered because their exclusion is *unconscionable*.' " (Emphases added.) *Intrastate Piping & Controls, Inc. v. Robert-James Sales, Inc.*, 315 Ill. App. 3d 248, 256 (2000), quoting *Myrtle Beach Pipeline Corp. v. Emerson Electric Co.*, 843 F. Supp. 1027, 1041 (D.S.C. 1993).

Regardless of whether this language is *dictum*, as plaintiff argues, it is a clear endorsement of the independent approach. Other case law has evinced a confusion as to whether the independent or dependent approach is to be followed. Compare *Lara v. Hyundai Motor America*, 331 Ill. App. 3d 53, 61 (2002) (quoting the above "three inquiries" language from *Intrastate Piping*), with *Lara*, 331 Ill. App. 3d at 63 (holding that "[i]f *** the limited remedy of replacement or repair of defective parts failed of its essential purpose, the express warranty's exclusion of consequential and incidental damages will have no effect and those damages will be available to plaintiff pursuant to the UCC"). We note also that in that portion of its opinion which endorsed the dependent approach, the *Lara* court–like *Adams*–cited section 2–719(2) of the UCC but failed to acknowledge section 2–719(3). See *Lara*, 331 Ill. App. 3d at 63; *Adams*, 125 Ill. App. 2d at 403. Illinois decisions dealing with the independent/dependent issue under the UCC have not been consistent. We believe that it is appropriate and necessary that we decide this question.

˘16˘

Moreover, we disagree with the reasoning, although not necessarily the result, in *Adams*. There, in refusing to enforce the consequential damages limitation, our appellate court focused on the allegedly tortious nature of defendants' conduct which caused the limited remedy to fail of its essential purpose. The court concluded that defendants were entitled to none of the protections included in the contract because they had "repudiat[ed] *** their obligations under the warranty." This implies that the sellers' alleged bad faith in repudiating their obligations under the warranty played a part in the analysis–but the dependent approach does not take the seller's good or bad faith into account. Under the dependent approach, the seller is stripped of the protection of a consequential damages disclaimer once a limited remedy has failed of its essential purpose, *regardless* of the seller's good or bad faith.

A seller's deliberate or negligent failure to supply a limited remedy can be taken into consideration in determining whether enforcement of a consequential damages waiver is unconscionable. The unconscionability determination is not restricted to the facts and circumstances in existence at the time the contract was entered into. *Pierce*, 2 P.3d at 623, quoting *Chatlos Systems*, 635 F.2d at 1087 ("in addition to inquiring into the circumstances at the time of the sale, courts examine the case 'from the perspective of later events' "). Indeed, section 2–719(3) itself expressly provides that matters which become known only subsequent to the drafting of the contract–*i.e.*, the type of injuries suffered as a result of breach–are relevant to the unconscionability calculus. 810 ILCS 5/2–719(3) (West 2000) ("Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not"); see also 810 ILCS 5/2–719, Uniform Commercial Code Comment 3, at 488 (Smith-Hurd 1993) ("clauses limiting or excluding consequential damages *** may not *operate* in an unconscionable manner" (emphasis added)). As many of the authorities favoring the dependent approach have noted, there is rarely any basis for concluding that when the parties entered into their contract, the buyer intended to assume the risk of the seller's willful or negligent default on his only obligation for breach of warranty.[3] It may well be that in a case such as *Adams*,

---

[3]However, as we previously observed, we do not find this to be a compelling argument for the dependent approach itself, which strikes

where the defendant is alleged to have acted in bad faith, the correct result would be to declare a consequential damages exclusion unenforceable. See *McNally Wellman Co. v. New York State Electric & Gas Corp.*, 63 F.3d 1188, 1198 n.9 (2d Cir. 1995) (noting that "section 1–203 of the UCC, which states that '[e]very contract or duty within this Act imposes an obligation of good faith in its performance or enforcement,' " supports the conclusion that bad faith could vitiate a section 2–719(3) consequential damages exclusion). Accordingly, we believe that a plaintiff must be allowed to point to a defendant's conduct, or any other circumstance which he believes would make enforcement of a consequential damages exclusion unconscionable. But the plain language of the UCC indicates that this step, of evaluating whether the exclusion is unconscionable, must be taken before a contractual consequential damages exclusion may be done away with. See 810 ILCS 5/2–719(3) (West 2000).

We conclude that the independent approach is the better-reasoned and more in accordance with the plain language of the UCC. This conclusion is buttressed by the fact that a majority of jurisdictions to consider the issue have adopted the independent approach. Illinois generally follows the majority interpretation of UCC provisions, in order to serve the underlying UCC policy of " 'mak[ing] uniform the law among the various jurisdictions.' " *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 491 (1996), quoting 810 ILCS 5/1–102(2)(c) (West 1994). Contractual limitations or exclusions of consequential damages will be upheld unless to do so would be unconscionable, regardless of whether the contract also contains a limited remedy which fails of its essential purpose.

## B. *Unconscionability*

Accordingly, the mere fact that the jury found the limited remedy to have failed of its essential purpose does not destroy the provision in the warranty excluding consequential damages. However, this does not mean that the exclusion of consequential damages will necessarily be upheld. Rather, that provision must be judged on its own merits to determine whether its enforcement would be unconscionable. 810 ILCS 5/2–719(3) (West 2000).

---

consequential damage limitations regardless of the seller's good faith.

A determination of whether a contractual clause is unconscionable is a matter of law, to be decided by the court. 810 ILCS 5/2–302(1) (West 2000); *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989 (1980). Unconscionability can be either "procedural" or "substantive" or a combination of both. *Frank's Maintenance*, 86 Ill. App. 3d at 989. But see *Rosen v. SCIL, LLC.*, 343 Ill. App. 3d 1075, 1081 (2003) (for a term to be found unconscionable, it must be both procedurally and substantively unconscionable); 1 Farnsworth, Farnsworth on Contracts §4.28, at 585 (3d ed. 2004) ("Most cases of unconscionability involve a combination of procedural and substantive unconscionability," although contracts may be voidable without substantive unconscionability if the procedural unconscionability is sufficiently severe). Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it, and also takes into account a lack of bargaining power. *Frank's Maintenance*, 86 Ill. App. 3d at 989. Substantive unconscionability refers to those terms which are inordinately one-sided in one party's favor. *Rosen*, 343 Ill. App. 3d at 1081.

Hyundai argues that plaintiff introduced no evidence to support the trial court's determination that the consequential damages exclusion was unconscionable. We disagree. There are a number of facts immediately apparent from the record which tend to support a finding of unconscionability. This was a contract on a preprinted form, which plaintiff had no hand in drafting. The parties to the contract–a merchant and a consumer–had enormously disparate bargaining power. Moreover, the clause in question is intended to limit the drafter's liability. None of these facts are alone dispositive, but each one is a factor which leads this court to disfavor the clause. See *Pierce*, 2 P.3d at 623 ("Courts are more likely to find unconscionability when a consumer is involved, when there is a disparity in bargaining power, and when the consequential damages clause is on a pre-printed form"); *Frank's Maintenance*, 86 Ill. App. 3d at 992 (although UCC permits clauses limiting remedies, such clauses are disfavored and must be strictly construed). However, we need not–and we do not–hold that these general circumstances alone or in combination render the clause unconscionable.

There is an additional fact particular to this case which tips the

balance in plaintiff's favor. That is the lack of evidence that the disclaimer of consequential damages was present within the written contract itself. Neither party argues that the limited warranty and the disclaimer of consequential damages contained therein were not actually part of the parties' agreement. Rather, both parties proceed from the assumption that the disclaimer is a *potentially* enforceable contractual term, only differing over whether it *should* be enforced in this case. Accordingly, we will assume for purposes of analysis that the disclaimer is part of the parties' contract. However, the fact remains that the portion of the written contract which was admitted into evidence makes no reference to these terms, and neither party now objects to the circuit court's ruling admitting the contract into evidence. Although the contract does mention provisions on the back of the page, the back of the page does not appear in the record before us. Moreover, plaintiff testified without contradiction that she never saw any part of the written warranty, much less the disclaimer of consequential damages, until she looked in her owner's manual after she had signed the contract and driven the car off the lot.

As previously noted, procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it. Surely, whatever other context there might be in which a contractual provision would be found to be procedurally unconscionable, that label must apply to a situation such as the case at bar where plaintiff has testified that she never saw the clause and defendants produced no evidence that the clause is present or even referred to in the written contract which plaintiff signed. "[A] limitation of liability given to the buyer after he makes the contract is ineffective." *Frank's Maintenance*, 86 Ill. App. 3d at 991 n.2. Moreover, if there were any question regarding pure procedural unconscionability, we reiterate that unconscionability can be a combination of circumstances substantive and procedural. *Frank's Maintenance*, 86 Ill. App. 3d at 989. In this case the circumstances are: there is no evidence that the consumer plaintiff saw or could have seen a clause disclaiming a seller's liability, in a form contract drafted by the seller, a merchant with superior bargaining power.

To enforce the clause in these circumstances, we conclude, would indeed be unconscionable. Accordingly, we affirm the circuit court's order to that effect, as well as the $3,500 which represents that portion of the jury verdict intended to recompense plaintiff for the

consequential damages she incurred.

## II. Warranty Damages

The next issue concerns the jury's $5,000 warranty damage award for the decreased value of the car due to the no-start condition. Hyundai does not object to the jury's conclusion that the vehicle was defective or that the limited remedy failed of its essential purpose. Rather, Hyundai contends merely that there was no evidence to support the jury's damages award, and argues that because the award can only have represented a guess by the jury, the court should have entered judgment notwithstanding the verdict (*n.o.v.*) in Hyundai's favor. Plaintiff responds that she is not required to prove damages with mathematical precision, and argues that there was sufficient evidence on damages for the case to go to the jury.

As the appellate court noted, the standard for entry of judgment *n.o.v.* is a high one:

> "A court may enter a judgment *n.o.v.* only when, viewing the evidence in a light most favorable to the nonmoving party, it so overwhelmingly favors the movant that a contrary verdict could not stand. [Citation.] A defendant's motion for judgment *n.o.v.* presents ' "a question of law as to whether, when all of the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the plaintiffs, there is a total failure or lack of evidence to prove any necessary element of the plaintiff['s] case." ' [Citation.]" 349 Ill. App. 3d at 658.

Because the limited remedy failed of its essential purpose, plaintiff was entitled to pursue the other remedies afforded by the UCC. 810 ILCS 5/2–719(2) (West 2000). Under the UCC, "The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." 810 ILCS 5/2–714(2) (West 2000). "While it is not necessary that damages for breach of warranty be calculated with mathematical precision [citation], basic contract theory requires that damages be proved with reasonable certainty and precludes damages based on conjecture or speculation [citation]." *Ouwenga v. Nu-Way Ag, Inc.*, 239 Ill. App. 3d 518, 523 (1992). Accord *Mitsch v. General*

*Motors Corp.*, 359 Ill. App. 3d 99, 104 (2005); *Valenti v. Mitsubishi Motor Sales of America, Inc.*, 332 Ill. App. 3d 969, 973 (2002). See also *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 118 Ill. 2d 306, 315-16 (1987) ("In order to recover lost profits, it is not necessary that the amount of loss be proven with absolute certainty. *** However, recovery of lost profits cannot be based upon conjecture or sheer speculation. [Citation.] It is necessary that the evidence afford a reasonable basis for the computation of damages").

In this case there was no sufficient basis for the jury's $5,000 award. There was no documentary evidence submitted on the damages question, nor expert testimony. The only possible evidence of how much the vehicle's value decreased is plaintiff's testimony, and plaintiff's only testimony which touches on the subject was that she would not today pay the price she had originally paid for the vehicle, because "given the problems that this vehicle–that I have had with this vehicle or the problems the vehicle has had, that's like a used car. I would not pay that for a new car with used problems as it were." There is simply no way for the jury to get from this testimony to a $5,000 award without engaging in speculation and conjecture. " '[I]n proving damages, the burden is on the plaintiff to establish a reasonable basis for computing damages.' " *Snelson v. Kamm*, 204 Ill. 2d 1, 33 (2003), quoting *Gill v. Foster*, 157 Ill. 2d 304, 313 (1993). In this case, plaintiff failed to do so.

Plaintiff notes that the price of the car was also entered into evidence and suggests that jurors have sufficient familiarity with cars and breakdowns that they ought to be permitted to determine for themselves how much a car's value would be diminished by events of the type which occurred in this case. Plaintiff cites a number of cases which suggest that damages may be proven in any manner which is "reasonable," and also notes that our appellate court has held that "[w]here the right of recovery exists the defendant cannot escape liability because the damages are difficult to prove." *Burrus v. Itek Corp.*, 46 Ill. App. 3d 350, 357 (1977).

We agree that damages may be proven in any reasonable manner, as a general proposition of law (see, *e.g.*, *Snelson*, 204 Ill. 2d at 33) but this begs the question whether damages were proven in a reasonable manner in this case. The answer is clearly no. Although jurors are not required to check their common sense at the courtroom door (see *People v. Steidl*, 142 Ill. 2d 204, 238 (1991)), we are not

prepared to endorse the proposition that jurors are as a class sufficiently familiar with automobiles as to be able to determine the degree of diminution of a particular vehicle's value based on a particular defect without the need for any evidence at all. This is more than a matter of simple common sense. Plaintiff testified, in essence, that "It wasn't worth what I paid for it." There was no number presented, nothing for the jury to work from.

Plaintiff argues that the Magnuson-Moss Act and the UCC are to be construed liberally, and argues that when a plaintiff proves he has suffered damages, the defendant ought not to escape liability simply because the precise measure of the damages is difficult to ascertain. See *Burrus v. Itek Corp.*, 46 Ill. App. 3d 350, 357 (1977). We again agree with these propositions as a general matter. But regardless, even assuming that plaintiff suffered some damage, there must be some basis for a jury's damage award, and we can see no process other than speculation by which the jury could have translated the evidence presented by plaintiff to an award of $5,000. We note that even in *Burrus*, itself a UCC case in which a dissatisfied buyer was attempting to recover for the value of defective goods, the record included "testimony" as to "the actual value of the defective [goods] at time of acceptance." *Burrus*, 46 Ill. App. 3d at 357. In this case, by contrast, there is nothing, truly not a scintilla of evidence to support any particular verdict at which the jury might have arrived–much less the suspiciously round number of $5,000.

However, we feel compelled to note that plaintiff attempted to introduce such evidence. During plaintiff's case in chief, the circuit court precluded plaintiff's counsel's from asking plaintiff how much she would have paid for the car if she had known of the defects. This was error, and it was only because of this error that plaintiff failed to prove damages. Although the decision whether a witness is competent to testify is a matter within the trial court's discretion, lay witnesses are permitted to give their opinion as to the value of property if they have sufficient personal knowledge of the property and its value. *State Farm General Insurance Co. v. Best in the West Foods, Inc.*, 282 Ill. App. 3d 470, 483 (1996). It is true that there must be an adequate showing of the basis for such testimony before it will be allowed (*Best in the West Foods*, 282 Ill. App. 3d at 483), but in this case, the circuit court sustained defense counsel's objection while plaintiff's counsel was attempting to establish the foundation of plaintiff's knowledge as to the value of the vehicle. This was clearly

erroneous.

Accordingly, although plaintiff's case failed for proof of damages, it would be entirely unjust to reverse the verdict outright. As previously noted, "[w]here the right of recovery exists the defendant cannot escape liability because the damages are difficult to prove." *Burrus*, 46 Ill. App. 3d at 357 (1977). Accord *McGrady v. Chrysler Motors Corp.*, 46 Ill. App. 3d 136, 140 (1977). Therefore, pursuant to our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we reverse and remand for a new trial solely on the question of the warranty damages to which plaintiff is entitled. See *Ford Motor Co. v. Cooper*, 125 S.W.3d 794, 804 (Tex. Civ. App. 2004) (noting that "appellate courts have reversed for a new trial where, among other circumstances, the plaintiff failed to show damages with reasonable certainty, but the interests of justice required the plaintiff be given an opportunity to show the proper measure of his or her damages," and remanding for new trial, where jury awarded plaintiff $5,000 for breach of automobile warranty without sufficient evidence of value as delivered).

At this new trial, plaintiff's counsel must not be precluded from attempting to lay a foundation for plaintiff's knowledge of the value of the car. However, of course, the evaluation of the sufficiency of whatever foundation may be laid to establish plaintiff's personal knowledge of the value of the car will be within the circuit court's discretion (*Best in the West Foods*, 282 Ill. App. 3d at 483); we are not prejudging this question in favor of either party.

### III. Attorney fees

Hyundai admits that the Magnuson-Moss Act permits the court to award attorney fees to a victorious plaintiff. See 15 U.S.C. §2310(d)(2) (2000). Hyundai's only argument here is that once we have reversed the entire verdict in plaintiff's favor, plaintiff cannot be considered "victorious," and accordingly we must also reverse the fee award. Hyundai does not argue nor even suggest that a partial reversal requires that we remand the cause to the circuit court to recalculate the fees to which plaintiff's counsel would be entitled. However, we have not reversed the entire verdict in plaintiff's favor. Accordingly, this argument fails.

### CONCLUSION

For the reasons given above, the judgment of the appellate court

is affirmed in part and reversed in part, and the judgment of the circuit court is also affirmed in part and reversed in part. We remand for a new trial on the issue of warranty damages.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed in part*
*and reversed in part;*
*cause remanded.*